UNITED STATES v. WINONA & ST. P. R. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. May 6, 1895.)

No. 566.

1. PUBLIC LANDS—RAILROAD GRANTS — EXCEPTED TRACTS — BONA FIDE PURCHASERS—NOTICE.

Actual possession of land by one claiming under a pre-emption filing at the time when a land grant railroad was so located as to include such land within its place limits is notice to all persons purchasing under the grant while such occupancy continues that the land was excepted from the grant, and hence they cannot successfully claim, by way of defense to a suit brought by the United States to annul the grant, that they were bona fide purchasers.

2. SAME—ESTOPPEL AGAINST THE UNITED STATES.

Long-continued delay by the United States in bringing a suit to cancel an erroneous certification of lands to a state in aid of a railroad, by which delay the railroad company and its grantees were prevented from acquiring indemnity lands in place of those erroneously certified, raises no equitable estoppel against the United States, both because there was no intended deception on the part of the government or its officers, and because the United States is not bound, in respect to the enforcement of rights or the protection of interests which are vested in it in its sovereign capacity, by any laches or negligence of its officers.

3. SAME.

Where a suit is brought in the name of the United States pursuant to an act of congress expressly directing the same for the purpose of canceling an erroneous certification of lands to a state to aid in the construction of a railway, the fact that, previous to the bringing of the suit, a pre-emptioner, whose claim had been canceled, petitioned the land department for the reinstatement of his rights, is not sufficient to raise a presumption that the suit was brought for his benefit alone; but, on the contrary, the government must be considered to have such a direct interest in the suit as will prevent the operation of any laches or estoppel on account of the negligence of its officers; for, if the pre-emptioner's claim should be ultimately sustained, the government would be entitled to receive from him the minimum price of the land, and, if not sustained, it would have the land itself.

Appeal from the Circuit Court of the United States for the District of Minnesota.

Robert G. Evans, for the United States.

Thomas Wilson (Lloyd W. Bowers, on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from a decree dismissing a bill brought by the United States under the act of March 3, 1887 (24 Stat. 556), to restore to the United States the title to 160 acres of land, which at the commencement of this suit was held by the appellee the Winona & St. Peter Land Company. That corporation had acquired its title through a certification of the land to the state to aid in the construction of the railroad of the Winona & St. Peter Railroad Company, the purchase of the land from that company by Barney and his associates, the purchase of the land from Barney and his associates by the land company, and through conveyances of the land by the state to the railroad company and by the railroad company to the land company, in the same way in which it acquired the land it held under the certificates for the benefit of the Winona Railroad Company in No. 564 (U. S. v. Winona & St. P. R. Co., 67 Fed. 948). The method by which that title was acquired by the land company and the rules and principles which measure the rights of the parties to it are stated with some care in the opinion in that case, and will not be here repeated. The two cases were argued and submitted together, and, with the exceptions to which we shall refer, the material facts in the two cases are the same.

The record in this case discloses one decisive fact which did not appear in that case. We held in that case that the United States could not maintain its suit to restore the title to the land held by this land company under the certificates to the state for the Winona Railroad Company, because both Barney and his associates and the land company were bona fide purchasers of the title to that land without notice of any defects therein. In this case they had full notice of the defects in the title to the 160 acres in question here before they bought or paid for the land. The grant was made March 3, 1857 (11 Stat. 195). On June 30, 1857, one Marshall took possession of the land, and commenced to occupy and cultivate it for the purpose of acquiring the title to it under the pre-emption laws. On July 3, 1857, he made a pre-emption filing upon it in the proper land office, which has never been canceled. He held the possession of this land until 1878, when a judgment was rendered against him in an action of ejectment, which was brought by the land company in 1877 in the district court of Dodge county, Minn. In the meantime he had built a house and stables upon the land, and had cultivated and dwelt upon it at least a portion of the time. After the judgment of the district court had been rendered, in 1878, he surrendered the possession of the land to this land company, in obedience to that judgment. On November 15, 1887, he filed in the office of the commissioner of the general land office an application for a reinstatement of his pre-emption rights, which has not been passed upon by the land department because that tribunal holds that it has no jurisdiction to consider it. This land is within the place limits of the grant for the Winona Company under the act of March 3, 1857 (11 Stat. 195). After the pre-emption filing was made, and while Marshall was in possession of this land, claiming

it as a pre-emptor, the line of the definite location of the Winona Company was fixed, this land was certified to the state to aid in the construction of that railroad, Barney and his associates bought it of the railroad company, the land company bought it of Barney and his associates, and the legal title was finally, on April 21, 1876, vested in the land company by means of conveyances from the state to the railroad company and from the railroad company to the land company.

The possession of this land by Marshall, claiming under his pre-emption filing, was notice to Barney and his associates and to the land company of his claims to the land as a pre-emptor, and of the fatal defect in their title to which these claims so clearly pointed. Lea v. Copper Co., 21 How. 493, 498; Noyes v. Hall, 97 U. S. 34, 37, 38; Siebert v. Rosser, 24 Minn. 155, 161; 16 Am. & Eng. Enc. Law, tit. "Notice," subtit. "Possession," p. 800, and authorities there cited. The purchase of the land company, therefore, lacks the essential element of absence of notice of defects in its title, and it cannot in this case sustain the defense that it is a bona fide purchaser. Nor can the United States be deprived of the relief sought in this suit by the statute of limitations, or by its laches, or on the ground of an estoppel in pais. No equitable estoppel against the government arises here from the fact that, if the United States had promptly set aside the certification of this land to the state in 1862, immediately after it was made, the railroad company and its grantees might have acquired indemnity lands in place of this tract, while no such lands can now be found or obtained. Mr. Justice Field, in delivering the opinion of the supreme court in Henshaw v. Bissell, 18 Wall. 255, 271, declared that "there must be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as to amount to constructive fraud," to warrant the application of the doctrine of equitable estoppel. There was no intended deception in the conduct or certification of the government or of any of its officers in this case. They acted in the utmost good faith, and their delay was the result of their honest belief that the land had been properly certified. The negligence of the officers of the government, however gross, could not raise an estoppel against it. Negligence is but another name for laches. Public policy demands that public interests shall not be prejudiced or jeopardized by the carelessness of governmental officials. It has been long and conclusively settled that the United States is not bound by any statute of limitations, nor barred by any laches or negligence of its officers, in a suit to enforce the rights or to protect the interests vested in it as a sovereign government. Lindsey v. Miller, 6 Pet. 666; U. S. v. Knight, 14 Pet. 301, 315; Gibson v. Chouteau, 13 Wall. 92; U. S. v. Thompson, 98 U. S. 486; Fink v. O'Neil, 106 U. S. 272, 281, 1 Sup. Ct. 325; U. S. v. Nashville, etc., Ry. Co., 118 U. S. 120, 125, 6 Sup. Ct. 1006; U. S. v. Beebe, 127 U. S. 338, 344, 8 Sup. Ct. 1083.

It may be conceded that if Marshall, the pre-emptor, had brought a suit in 1891, when this suit was commenced, to obtain a decree to

the effect that the title of the land company was held by it in trust for him, the statute of limitations of Minnesota and his own laches would have defeated him. Railroad Co. v. Sage, 4 U. S. App. 160, 1 C. C. A. 256, and 49 Fed. 315. Nor is it denied that "when the government is a mere formal complainant in a suit, not for the purpose of asserting any public right or protecting any public interest, title, or property, but merely to form a conduit through which one private person can conduct litigation against another private person, a court of equity will not be restrained from administering the equities existing between the real parties by any exemption of the government designed for the protection of the rights of the United States alone." U. S. v. Beebe, 127 U. S. 338, 347, 8 Sup. Ct. 1083; Curtner v. U. S., 149 U. S. 662, 674, 13 Sup. Ct. 985, 1041. But the United States sustains no such relation to this suit. The act of congress of March 3, 1887 (24 Stat. 556), made it the duty of the secretary of the interior to adjust the land grant of the Winona Company, and to demand the reconveyance to the United States by that company of any lands erroneously certified to the state for the benefit of the company. This tract of land was erroneously certified for the benefit of the Winona Company, and the secretary demanded its reconveyance. The act of congress required the attorney general, in case the railroad company should fail to reconvey the land within 90 days after the demand of the secretary, to bring this suit or a like proceeding to cancel the certification to the state, and to restore the title of the land to the United States. The railroad company failed to reconvey for 90 days after demand, and the attorney general exhibited this bill as the act of congress directed him to do. The only evidence tending to show that this suit was instigated by Marshall, or that it is prosecuted for his benefit, is the fact that he filed a petition with the commissioner of the general land office in November, 1887, for a reinstatement of his pre-emption rights. It cannot be presumed that this petition was the only or the proximate cause of the institution of a suit which congress had directed to be brought in any event. It was the duty of the secretary of the interior and the attorney general to investigate this case, and to prosecute this suit, regardless of the application of Marshall. That the faithful discharge of the duties of government may result in the protection or restoration of the rights of individuals does not deprive those duties of their public character or privileges. Moreover, the United States is not without interest in this suit. If Marshall's claims as a pre-emptor are ultimately sustained, the government will receive from him at least the minimum price of the land (section 2259, Rev. St.); and, if they are not sustained, they will have the land itself.

Our conclusion is that the United States has a pecuniary interest in the result of this suit; that it is brought and is prosecuted by the direction of congress to protect the public interests, and to discharge the duties imposed upon the United States as a sovereign government; and that the government is entitled to the benefit of its exemption from the statute of limitations and from laches in

this case. The decree below must be reversed, and the cause remanded, with directions to enter a decree for the relief prayed in the bill; and it is so ordered.