CHURCH OF CHRIST AT INDEPENDENCE, MO., et al. v. REORGANIZED CHURCH OF JESUS CHRIST OF LATTER–DAY SAINTS.

(Circuit Court of Appeals, Eighth Circuit. December 9, 1895.)

No. 516.

LACHES—CHARITABLE TRUSTS.

Though charitable trusts are highly favored by the law, and a court of equity will sometimes entertain a bill, after a long period of delay, to correct the administration of a charitable trust, which is being administered contrary to the plain intent of the founder, it is not a rule of universal application that laches cannot be set up in defense of a suit to enforce a charitable trust. Accordingly, *held* that, in a suit between rival church sects, each seeking to obtain possession of certain real estate in order to devote it in its own way to pious uses, neither the state nor the public at large having any interest in the litigation, a delay by the complainant of 25 years before asserting its claims, during which the defendant had expended money in buying an apparently valid title and in paying taxes, was laches such as to bar complainant from relief.

Appeal from the Circuit Court of the United States for the Western District of Missouri.

This was a suit by the Reorganized Church of Jesus Christ of Latter-Day Saints against the Church of Christ at Independence, Mo., to assert title to certain lands in the city of Independence. A decree in the complainant's favor rendered by the circuit court (60 Fed. 937) was reversed by the circuit court of appeals (70 Fed. 179). Complainant moved for a reargument. Denied.

C. O. Tichenor and John N. Southern, for appellants.

Frank Hagerman and E. L. Kelley (P. P. Kelley, L. Traber, and George Edmonds, on the briefs), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

PER CURIAM. It is contended in behalf of the Reorganized Church that the doctrine of laches, as heretofore applied, is not applicable to the case at bar, because the bill of complaint was filed to enforce a charitable trust. It is urged, in substance, that because the land in controversy was originally acquired for the benefit of a religious society, it necessarily became impressed with a charitable trust, and that no lapse of time, however great, will serve to bar an action that is brought to enforce a trust of that nature. The same proposition was stated in the original brief filed by counsel for the appellee, one or two authorities were cited in its support, and the proposition was duly considered. Little dependence, however, seemed to be placed on the proposition in the oral argument, and for that reason we did not consider it necessary to discuss the subject in the opinion heretofore filed. But, inasmuch as counsel for the appellee have erroneously assumed in the petition for a rehearing that the doctrine which was invoked to avoid the defense of laches was entirely "overlooked and ignored," it now becomes necessary to notice it.

It is a general rule that laches on the part of its officers will not be imputed to the government, and that no period of delay on the part of the sovereign power will serve to bar its right, either in a court of law or equity, when it sees fit to enforce it for the public benefit. U. S. v. Kirkpatrick, 9 Wheat. 720; Gaussen v. U. S., 97 U. S. 584; U. S. v. Insley, 130 U. S. 263, 9 Sup. Ct. 485; U. S. v. Winona & St. P. R. Co., 15 C. C. A. 117, 67 Fed. 969, 971. There are some English cases in which the court of chancery has interfered with the management of a certain class of charitable trusts, although the grievances complained of were of long standing. Attorney General v. Mayor de Coventry, 2 Vern. 396; Attorney General v. Mayor of Bristol, 2 Jac. & W. 294; Attorney General v. Christ's Hospital, 3 Mylne & K. 344; Attorney General v. Corporation of Beverley, 6 De Gex, M. & G. 256. See, also, Society v. Richards, 1 Con. & L. 58. In one or two of these cases laches was relied upon, in part, as a defense, and with reference thereto the remark was made, in substance, that when the court sees clearly the intention of the founder of a charity, no argument founded on length of time can prevail against it. These were cases, however, in which informations had been filed by the attorney general to enforce clearly-defined charitable trusts in which the public had some interest. With one exception the trusts were not denied, and the

suits were against certain municipal corporations who held property that had been devoted to certain charitable uses, which was being administered in a manner not authorized by the founder of the charity. Besides, in these cases, no sufficient reason founded on lapse of time was shown why the abuses complained of should not be corrected. In this country the doctrine is well established that although laches is not, ordinarily, a defense to a suit brought by the government, yet that it is a defense, even as against the government, when it brings a suit solely for the benefit of a private individual, or when it sues to enforce a right of its own growing out of some ordinary commercial transaction. U. S. v. Beebe, 127 U. S. 338, 8 Sup. Ct. 1083; Cooke v. U. S., 91 U. S. 389; Union Pac. R. Co. v. U. S., 15 C. C. A. 123, 67 Fed. 975, 979. While it is no doubt true that charitable trusts are highly favored by the law, and that a court of equity will sometimes entertain a bill, after a long period of delay, to correct the administration of a charitable trust which is being administered contrary to the plain intent of the founder, yet it is equally true that when the intent of the founder of a charitable trust is not clearly manifest, length of time and acquiescence in a particular mode of administration will always be taken as good evidence of the founder's purpose, and of the manner in which the trust ought to be administered. Attorney General v. Mayor de Coventry, 2 Vern. 396, 398; Dublin Case, 38 N. H. 459, 512. To this extent do the authorities go, but no further.

We fail to see that the principle which may fairly be extracted from the decisions is sufficient to sustain the broad contention of the Reorganized Church that the doctrine of laches cannot be invoked by the appellant as a defense. It is most probable, we think, that very much of the property described in the alleged deed of Edward Partridge to the Cowdery children was intended for secular, rather than for pious, uses, while it is not certain that any portion of the property was intended to be used exclusively to promote the cause of religion. The suit at bar cannot be regarded as a suit to enforce the due administration of a charitable trust in the ordinary sense. On the contrary, it is a controversy between rival church sects or congregations to obtain the possession of certain real estate, to the end that they may each devote it, in their own way, to pious uses. It is one of those controversies, therefore, in which the public at large have no immediate concern. Moreover, as the state of Missouri is not a partisan in matters of faith, but guaranties perfect religious freedom to all its citizens, and is precluded by its constitution (article 2, § 7) from lending aid or support, either "directly or indirectly," to "any church sect or denomination of religion," it is manifest that the state could not maintain a suit to recover the property in controversy for the use and benefit of the Reorganized Church, either upon the theory that it is the duty of the state to see that property conveyed to pious uses is faithfully administered, or upon any other theory. The state, and the public whom it represents, have no more interest in the pending litigation than they have in any other suit between private parties, because there is no public interest at stake to be either conserved or protected.

In view of these considerations, and the state of facts disclosed by the present record, it is impossible to assign any substantial reason why the doctrine of laches should not be applied to the case at bar precisely as it is applied in other suits between private persons. Such, in brief, are the views that were entertained when the former opinion was announced, and that are still entertained.    It may be conceded that, because the members of the Church of Jesus Christ of Latter-Day Saints, commonly called "Mormons," were driven from the state by force, and subsequently became widely scattered, and divided into factions by different revelations of the divine will, therefore the doctrine of laches should be less rigidly enforced than it would be under other conditions.    But neither the circumstances last mentioned, nor the fact that the property, if recovered, is to be devoted to pious uses, is sufficient to relieve the Reorganized Church from all blame because of its long delay and want of diligence.    That branch of the Mormon Church termed "Hedrickites," who are now in possession of the property, took steps to recover it as far back as the year 1869, and probably some years prior to that date.    Acting on the assumption, no doubt, that the Pool title to the 63-acre tract was valid, and would probably be upheld by the courts, they saw fit to purchase that title to the premises in controversy.    They have since paid all the taxes on the property, have erected a house of worship thereon, and have been in the undisturbed possession thereof for more than 10 years up to the present day. In the meantime—that is to say, for more than 25 years last past—the Reorganized Church has not only been a duly-organized religious society, having bishops and councils for the management of its affairs, but it has had ample opportunity to assert and enforce its claim to the property in question, either in the local or in the federal courts.    It has failed to take any action in that behalf until it is too late to entertain its claim without doing gross injustice to others, and under such circumstances a court of equity will not interfere.

With reference to the suggestion contained in the petition for a rehearing, that the decree of the circuit court should have been reversed, with leave to amend the bill, it is only necessary to say that such action would probably have been taken but for the fact that it seemed evident, after a full consideration of the testimony, that the bill of complaint could not be so amended as to avoid the defense of laches.    For that reason it was deemed best to avoid further litigation and expense by directing the circuit court to dismiss the bill.

We also note that the thought intended to be expressed by a single paragraph found in the original opinion seems to have been misconceived by counsel for the appellee.    In concluding the discussion of the first question considered in the opinion, this expression was used:

"Moreover, it would seem that the settlement of that question will at the same time determine upon what trust, if any, the property in controversy is now held."

Counsel for the appellee have assumed, in the petition for a rehearing, that by this is meant that a court of law is the proper forum in which to determine questions of trust; but nothing could be more at variance with the thought intended to be expressed.    We merely

intended to suggest that if the person who, as the bill showed, held the legal title to the land in controversy, in trust for the Reorganized Church, should bring an action of ejectment to recover the property from the pretended trustee in possession, who, as the bill alleged, had no title, but was merely a trespasser, and should succeed in such suit in recovering the possession, there would probably be no occasion thereafter for asking a court of equity to determine who was the proper beneficiary. The remark was intended to emphasize the fact that according to the averments of the bill there was no apparent difficulty in maintaining a suit in ejectment which would settle the entire controversy, inasmuch as the bill alleged, in substance, that the legal title in trust was vested either in the heirs of Blakeslee or in the present bishop of the Reorganized Church, whereas the parties in possession of the property were alleged to be mere trespassers. A person who holds the legal title to property, in trust for a religious sect or congregation, may doubtless maintain an action of ejectment against a person in possession who has no title, either legal or equitable. We think that the paragraph of the opinion in question, when judged by the context, is not liable to mislead, and is not subject to any just criticism.

The petition for a rehearing is accordingly denied.