CHASE v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 23, 1915.)

No. 4200.

*(Syllabus by the Court.)*

**1.** INDIANS ⬅11—INDIAN LANDS—RESTRICTIONS ON ALIENATION—OPERATION OF TREATY.

The treaty with the Omaha Tribe of Indians of March 6, 1865 (14 Stat. 667), granted to the assignees of land in severalty thereunder an inheritable title in fee simple to their respective tracts, subject to a restriction on alienation to others than the United States and other members of the tribe.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 26; Dec. Dig. ⬅11.]

**2.** UNITED STATES ⬅126—ACTION—FORMAL PARTY—RIGHTS.

When the United States brings an action in which it has no pecuniary interest, in behalf of or for the benefit of a private party, it stands in the shoes of that party, and has no higher or better right.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 115; Dec. Dig. ⬅126.]

**3.** CONSTITUTIONAL LAW ⬅252, 253—DUE PROCESS—INDIANS—VESTED RIGHTS.

Indians, as well as other residents and citizens of the United States, are protected by the fifth amendment to the Constitution against deprivation of property, life, or liberty without due process of law.

No act of Congress or legislative fiat constitutes such due process of law as may impair or destroy a vested right in or title to property.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 728–735; Dec. Dig. ⬅252, 253.]

**4.** CONSTITUTIONAL LAW ⬅52—CONSTRUCTION OF TREATIES—JUDICIAL FUNCTION.

The construction of treaties and the determination of the character and extent of the rights and titles granted thereunder is a judicial and not a legislative function.

The Constitution grants the power and imposes the duty, which may not be renounced, upon the courts to form and enforce their independent judgments upon these questions, although they may differ from the opinions of the Congress or its members.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 50, 52–54, 70, 72–80, 82, 84, 85; Dec. Dig. ⬅52.]

**5.** INDIANS ⬅3—TREATIES—CONSTRUCTION.

Because, when treaties were made with them, the Indians were unfamiliar with the language in which they were written, and with the exact meaning of many of the terms used in them, they must be construed liberally, doubtful expressions must be resolved in favor of the Indians, and the treaties must be interpreted, "not according to the technical meaning of their words, but in the sense in which they would naturally be understood by the Indians."

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 5–7, 11; Dec. Dig. ⬅3.]

*(Additional Syllabus by Editorial Staff.)*

**6.** ESTATES ⬅5—"FEE-SIMPLE ESTATE"—RESTRICTION ON ALIENATION.

An "estate in fee simple" arises where one has an estate in lands or tenements to him and his heirs forever, and such an estate is not inconsistent with a restriction on alienation.

[Ed. Note.—For other cases, see Estates, Cent. Dig. § 5; Dec. Dig. ⬅5.

For other definitions, see Words and Phrases, First and Second Series, Fee Simple.]

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of Nebraska; Page Morris, Judge.

Action by the United States, as trustee and guardian of the Omaha Tribe of Indians, and of Rose Wolf Setter, a member of said tribe, against Hiram Chase. Judgment for the United States, and defendant brings error. Reversed and remanded, with directions to enter judgment for defendant.

Hiram Chase, of Pender, Neb., and Thomas L. Sloan (William Ross King, of Omaha, Neb., on the brief), for plaintiff in error.

A. W. Lane, Asst. U. S. Atty., of Lincoln, Neb. (F. S. Howell, U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before SANBORN and SMITH, Circuit Judges, and TRIEBER, District Judge

SANBORN, Circuit Judge. The question in this case is whether Hiram Chase, the sole heir of the grantee of a tract of 40 acres of land under section 4 of the treaty of March 6, 1865, with the Omaha Tribe of Indians (14 Stat. 667, 668), or Rose Wolf Setter, the sole heir of the grantee of the same land under section 5 of the act for the sale of a part of the reservation of the Omaha Tribe of Indians of August 7, 1882 (22 Stat. c. 434, pp. 341, 342), has the title and the right to the possession of the tract. The facts which condition the answer to this question were set forth and admitted in the pleadings in this action, in which the United States, as trustee for Rose Wolf Setter and for the Omaha Tribe, brought an action and recovered a judgment against Chase for the value, use, and occupation of the land for many years. Those facts are these:

By the treaty of March 6, 1865, the United States agreed to pay the Omaha Tribe $57,000, the tribe agreed to sell and convey a part of their reservation to the United States, the United States and the tribe further agreed that the remainder of the reservation of the Omaha Tribe should be set apart for the purpose of abolishing the tenure in common by which the Omaha Indians held their lands and of assigning the same to them in severalty—

"and that out of the same there shall be assigned to each head of a family not exceeding one hundred and sixty acres, and to each male person, eighteen years of age and upwards, without family, not exceeding forty acres of land. * * * Said division and assignment of lands to the Omahas in severalty shall be, made under the direction of the Secretary of the Interior, and when approved by him, shall be final and conclusive. Certificates shall be issued by the Commissioner of Indian Affairs for the tracts so assigned, specifying the names of the individuals to whom they have been assigned respectively, and that they are for the exclusive use and benefit of themselves, their heirs and descendants; and, said tracts shall not be alienated in fee, leased or otherwise disposed of except to the United States, or to other members of the tribe, under such rules and regulations as may be prescribed by the Secretary of the Interior, and they shall be exempt from taxation, levy, or forfeiture, until otherwise provided for by Congress."

Pursuant to this treaty the land in controversy, which was a part of the land reserved thereunder to be assigned in severalty, was duly assigned about the year 1870 by the Secretary of the Interior to Clarissa Chase, a member of the Omaha Tribe, and the mother of the defend-

ant. A certificate was issued to her about the year 1870 by the Commissioner of Indian Affairs "that the said land was so assigned for the exclusive use and benefit of the said Clarissa Chase, her heirs and descendants, and that said tract shall not be alienated in fee, leased, or otherwise disposed of except to the United States, or the other members of the tribe under such rules and regulations as may be prescribed by the Secretary of the Interior, and they shall be exempt from taxation, levy, sale or forfeiture, until otherwise provided for by Congress," and thereafter, in the year 1871, Clarissa Chase took possession of the land, and continued in the open, notorious, exclusive, and adverse possession thereof until she died, about November 1, 1875. Immediately after her death Hiram Chase, who was her only surviving child and her sole heir at law, entered into possession of the land as such, and has ever since continued in the open, notorious, exclusive, and adverse possession thereof, claiming to be its owner.

[1, 2] The claim of the real plaintiff below, Rose Wolf Setter, arises in this way. By the terms of sections 4, 5, and 6 of the act to provide for the sale of a part of the reservation of the Omaha Tribe, etc., approved August 7, 1882 (22 Stat. c. 434, §§ 5, 6, p. 342), Congress provided (1) "that any right in severalty acquired by any Indian under existing treaties shall not be affected by this act;" (2) authorized the Secretary of the Interior to allot in severalty to the Indians of the tribe that portion of its reservation which includes the tracts in controversy in this action, and declared that the "allotments shall be deemed and held to be in lieu of the allotments or assignments provided for in the fourth article of the treaty with the Omahas, concluded March 6, 1865, and for which, for the most part, certificates in the names of individual Indians to whom tracts have been assigned, have been issued by the Commissioner of Indian Affairs as in said article provided," that certain Indians who have made valuable improvements on specified tracts of land should have respectively preference rights to select them, and that after the allotments were made under the act of August 7, 1882, the certificates issued by the Commissioner of Indian Affairs under the treaty of March 6, 1865, should be null and void, and the Secretary of the Interior should issue patents to the allottees under the act of 1882 to the effect that the United States would hold the land thus allotted in trust for the allottees and their heirs respectively for 25 years, and would then convey the same to them. In 1899 the land in controversy was allotted by the Secretary of the Interior to Reuben Wolf, a member of the Omaha Tribe entitled to an allotment, and, on March 7, 1902, a trust patent for the land was issued to him under the act of August 7, 1882. On August 10, 1899, Reuben Wolf died, and Rose Wolf Setter, the real plaintiff, is his widow and sole heir.

Under this state of facts the question is whether the treaty of 1865 granted to Clarissa Chase a substantial title to or right in the 40-acre tract in question, or a mere revocable license of possession and use thereof. If the latter, the act of 1882 was undoubtedly a sufficient revocation of the license, and the title of Rose Wolf Setter is the superior one. If the former, the act of 1887 is ineffective to impair or destroy the right and title of Chase, and his title and right of possession

must prevail over the claim of Rose Wolf Setter, the Omaha Tribe, and the United States, which has no pecuniary interest in the action or the property involved, and no higher or better right than Rose Wolf Setter, whom it represents. United States v. Beebe, 127 U. S. 338, 346, 8 Sup. Ct. 1083, 32 L. Ed. 121; United States v. Winona & St. Peter R. R. Co., 67 Fed. 969, 972, 15 C. C. A. 117, 120.

[3] If by the treaty of 1865 a substantial right in or title to the land in question was granted to or vested in Clarissa Chase and her heirs, the subsequent act of Congress of 1882 was ineffective to impair or destroy that right or title because:

First, Indians as well as other residents and citizens of the United States are protected by the fifth amendment to the Constitution against deprivation of property, life, or liberty without due process of law. No act of Congress or legislative fiat constitutes due process of law, whereby a vested right in or title to property may be either seriously impaired or destroyed. Choate v. Trapp, 224 U. S. 665, 670, 677, 32 Sup. Ct. 565, 56 L. Ed. 941; Jones v. Meehan, 175 U. S. 1, 20 Sup. Ct. 1, 44 L. Ed. 49; In re Heff, 197 U. S. 488, 504, 25 Sup. Ct. 506, 49 L. Ed. 848; Cherokee Nation v. Hitchcock, 187 U. S. 294, 307, 23 Sup. Ct. 115, 47 L. Ed. 183; Jackson v. Goodell, 20 Johns. (N. Y.) 188; Lowry v. Weaver, 4 McLean, 82, Fed. Cas. No. 8,584; Whirlwind v. Von der Ahe, 67 Mo. App. 628; Taylor v. Drew, 21 Ark. 485, 487.

[4] Second. Except in political cases, and this case is not a political case, Congress has no power under the Constitution of the United States to affect rights or titles granted by a treaty, or to determine what rights were granted thereby. Nor may the character of the right or interest granted to Clarissa Chase by the treaty of 1865 be determined by the opinion of Congress that that right or interest was revocable and negligible, though it be evidenced by its declaration in the act of 1882 that after the new allotments were made under that act the certificates of right and title issued by the Commissioner of Indian Affairs under the treaty of 1865 should be null and void. The construction of treaties and the determination of the character and extent of the rights and titles granted under them is a judicial, and not a legislative function, and by the Constitution the power is granted, and the duty, which may not be renounced, is imposed upon, the courts to form and enforce their independent judgments upon these questions, although these judgments may differ from the opinions of the Congress or its members. Jones v. Meehan, 175 U. S. 1–32, 20 Sup. Ct. 1, 44 L. Ed. 49; Wilson v. Wall, 6 Wall. 83, 89, 18 L. Ed. 727; Reichert v. Felps, 6 Wall. 160, 162, 18 L. Ed. 849; Smith v. Stephens, 10 Wall. 321, 327, 19 L. Ed. 933; Holden v. Joy, 17 Wall. 211, 247, 21 L. Ed. 523.

[5] Third. Section 4 of the act of 1882 expressly provides:

"That any right in severalty acquired by any Indian under existing treaties shall not be affected by this act."

We turn, therefore, to the treaty of 1865 to ascertain what right or title was granted to Clarissa Chase, and we lay out of consideration here the terms of the certificate issued under that treaty and of the certificate and patent issued under the act of 1882, because their validity

and effect are measured, respectively, by the legal effect of the treaty and the act under which they were respectively issued. A good title to parts of the lands of an Indian tribe may be granted to individuals by a treaty between the United States and the tribe without any act of Congress, or any patent or certificate from the executive department of the United States. Jones v. Meehan, 175 U. S. 1, 10, 20 Sup. Ct. 1, 44 L. Ed. 49; Johnson v. McIntosh, 8 Wheat, 543, 5 L. Ed. 681; Mitchel v. United States, 9 Pet. 711, 748, 9 L. Ed. 283; Doe v. Beardsley, 2 McLean, 417, 418, Fed. Cas. No. 5,497; United States v. Brooks, 10 How. 442, 460, 13 L. Ed. 489; Doe v. Wilson, 23 How. 457, 463, 16 L. Ed. 584; Crews v. Burcham, 1 Black, 356, 17 L. Ed. 91; Holden v. Joy, 17 Wall. 211, 247, 21 L. Ed. 523; Best v. Polk, 18 Wall. 112, 116, 21 L. Ed. 805; New York Indians v. United States, 170 U. S. 1, 18 Sup. Ct. 531, 42 L. Ed. 927; Francis v. Francis, 203 U. S. 233, 237, 239, 240, 27 Sup. Ct. 129, 51 L. Ed. 165. The question in every case is whether or not the terms of the treaty make a present grant of a substantial right to or title in the property. And because, when treaties were made with them, the Indians were unfamiliar with the language in which they were written and with the exact meaning of many of the terms used in them, they must be construed liberally, doubtful expressions must be resolved in favor of the Indians, and the treaties must be interpreted, "not according to the technical meaning of their words, * * * but in the sense in which they would naturally be understood by the Indians." Jones v. Meehan, 175 U. S. 1, 11, 20 Sup. Ct. 1, 5, 44 L. Ed. 49; Kansas Indians, 5 Wall. 737, 760, 18 L. Ed. 667; Choate v. Trapp, 224 U. S. 665, 675, 32 Sup. Ct. 565, 56 L. Ed. 941.

Counsel for the United States argue that there was no consideration for the grant of any substantial right to Clarissa Chase by the treaty of 1865, and that it is therefore not probable that it was the intention of the parties to make any such grant. But before the treaty was made Clarissa Chase had the right in common with all the members of her tribe to the joint use and occupation of all the lands of the tribe. By the treaty she surrendered to the other members of the tribe her right to the common use and occupation of the lands assigned to them in severalty under the treaty, as well as her beneficial right in the lands sold. She did this in consideration of the grant to her in severalty of her tract and the receipt by her tribe of the amounts paid for the lands sold. The consideration was ample to sustain a valid grant or contract. It is contended that the tribe had nothing but the right of possession and occupancy of the land, and therefore the assignment in severalty gave nothing but a right of possession and occupancy of the land assigned in severalty. But the United States had the title to the land and the power to convey it, and by the treaty the United States and the tribe, which together had the title and the right of possession and occupancy, assigned all their interest in the land here in question to the Indian designated by the Commissioner of Indian Affairs, in this case Clarissa Chase, for the exclusive use and benefit of that Indian, her heirs, and descendants, "not to be alienated in fee, except to the United States or other members of

the tribe, under such rules and regulations as may be prescribed by the Secretary of the Interior."

[6] An estate in fee simple is where one has an estate in lands or tenements to him and his heirs forever, and such an estate is not inconsistent with a restriction on alienation. Libby v. Clark, 118 U. S. 250, 255, 6 Sup. Ct. 1045, 30 L. Ed. 133. The grant of the treaty was therefore by those who held the title and right of possession of the land, for the exclusive benefit of the assignee, her heirs, and descendants; the treaty declared that when the assignment was approved by the Secretary of the Interior, as it was, it should be final and conclusive, and that the land should not be alienated in fee, except to the United States or the other members of the tribe. This was a grant, by those who had the title and right of possession, of title in fee, because it was a grant by them of the land to the assignee and her heirs forever, and because the restriction upon the alienation in fee, except to those specified, demonstrates the intention to grant the land in fee, with the power to alienate to the United States and the other members of the tribe. The title granted was inheritable, because it was to the assignee and her heirs. It was alienable to the United States and to other members of the tribe, because the restriction upon alienation was specifically to others, and the conclusion is irresistible that the treaty of 1865, interpreted in the sense in which it must have been naturally understood by the Indians and by the white men who made it, was a grant to the Indian assignees, designated by the Commissioner of Indian Affairs to receive lands in severalty thereunder, of the title to their respective tracts in fee, subject only to a restriction upon alienation to others than the United States or the other members of the tribe. Such a title and the right of exclusive possession and use of the tract in controversy in this case was granted to Clarissa Chase by the treaty and such a title her sole heir, Hiram Chase, has inherited and now holds.

This conclusion has not been reached without a careful consideration of the opinions of Judge Shiras in Sloan v. United States (C. C.) 95 Fed. 193, 196, and Sloan v. United States (C. C.) 118 Fed. 283. But in those cases the attention of the court does not appear to have been challenged to the rights of grantees holding their lands in severalty under the treaty of 1865, and so far as there are expressions in these opinions inconsistent with the conclusions that have been reached in this case they fail to persuade.

Let the judgment below be reversed, and let the case be remanded to the District Court, with instructions to render a judgment on the merits of the case in favor of Hiram Chase, the defendant below.