The judgment of the United States Customs Court is *affirmed.*

UNITED STATES *v.* W. H. S. LLOYD & Co., INC. (No. 4033)[1]

[1] T. D. 48832.

United States Court of Customs and Patent Appeals, February 8, 1937

*Joseph R. Jackson*, Assistant Attorney General (*Ralph Folks* and *Webster J. Oliver*, special attorneys, of counsel), for the United States.
*Allan R. Brown* for appellee.

[Oral argument December 8, 1936, by Mr. Folks and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal by the Government from the judgment of the United States Customs Court, First Division, in reappraisement 109634–A and nine others, under the Tariff Act of 1930, rendered by the division May 1, 1936, upon appeal from a decision and judgment by the single judge sitting in reappraisement on December 6, 1935.

The entries are so-called duress entries made in 1935. The test case mentioned in the duress certificates was *W. H. S. Lloyd Co., Inc.* v. *United States*, being reappraisement 107842–A, etc.

The record in the case at bar consists of the record in said test case, which was introduced at the trial before the single reappraising judge, and which consisted of an affidavit of John Thomas Chasney, dated December 10, 1934, therein identified as Exhibit 1, and two special agent's reports, therein identified as Collective Exhibits 2 and 3. In addition to the record in said reappraisement 107842–A, the Government in the instant case introduced a special agent's report, which was marked Exhibit 1.

The merchandise involved in the instant case and the test case consists of wall paper purchased from the Wall Paper Manufacturers Ltd., of London, England, and imported by the appellee. The paper in all the cases was entered at list prices less discounts of 10 per centum, 5 per centum, and 2½ per centum, plus packing. It was appraised by the local appraiser at said list prices less a discount of 2½ per centum, plus packing. Upon appeal, the single reappraising judge held that the dutiable value was the list prices less 10 per centum and 2½ per centum, plus packing, the 5 per centum, relating to sample books, being disallowed. No further appeal was taken in the test case.

In the duress cases here involved, the importer appealed from the appraisement of the appraiser who, in appraising the merchandise,

allowed a 2½ per centum discount from the list prices. Before the single judge sitting in reappraisement, the importer objected to the Government's introduction of evidence, consisting of a special agent's report, upon the theory that the final appraised value in the test case became the dutiable value in the duress cases, and that no evidence tending to prove any different value was competent. The single reappraising judge overruled the objection of the importer and held that by virtue of House Joint Resolution 336 (Public Resolution No. 37), approved July 12, 1932, published in T. D. 45805, the law had been changed, and that the final appraised value in the duress case should be accepted as the dutiable value. He, therefore, admitted the special agent's report, which included what was said to be a photostatic copy of a copy of an affidavit of said John Thomas Chasney, which the Government contended showed that the 10 per centum discount was not freely offered to all purchasers, etc. The single reappraising judge called attention to the fact that the affidavit "is not attested as to genuineness or authenticity" and said, "In my opinion, therefore, the affidavit has little or no probative value." He then found the dutiable value to be the invoiced and entered values less discounts of 10 and 2½ per centum, plus packing, which is the same value as that found in the test case.

The Government appealed to the United States Customs Court and before the First Division thereof challenged the correctness of the finding of the single reappraising judge as to the 10 per centum discount.

Before the appellate division of the trial court, and here, no question has been raised as to the correctness of the list prices, as to the deduction of the 2½ per centum for cash, or as to the correctness of the finding that the 5 per centum, relating to sample books, should not have been deducted. The sole question which was before the division, and is here before us, relates to the correctness of deducting 10 per centum from the list prices.

The United States Customs Court, First Division, held that the single reappraising judge erred in not giving consideration to the testimony introduced by the Government in the duress cases, but stated as follows:

* * * However, while error was committed by the court below in not giving consideration to the full report, we have given it such consideration, and we find that there is nothing in the report and the photostatic copy of the affidavit accompanying it that is contrary to the facts established by the affidavit, Exhibit 1, 107842–A, etc. * * *

It held that the affidavit introduced by the importer in the test case, which was reintroduced in the duress cases, established the correctness of the holding that the 10 per centum discount in controversy was properly deducted (along with the 2½ per centum discount) from the

list prices, and that there was nothing in the record to justify any other conclusion.

The Government in this court, aside from assigning error relating to the trial court's denial of a motion for a rehearing, confines the issue to be decided solely to the question of the allowance of the 10 per centum discount, and argues that the record shows that the 10 per centum discount was allowed to only a majority of the exporter's customers, was not allowed to all purchasers in the ordinary course of trade, and was, therefore, properly a part of the foreign value within the meaning of the statute. It quotes from the special agent's report and from the affidavits of said Chasney and argues that the affidavits show that the 10 per centum discount is allowed as a half-yearly deferred rebate to such customers only as would confine their purchases exclusively to the said English syndicate; that no customer obtained the 10 per centum discount unless it made all its purchases from the syndicate, if the syndicate sold the character of goods which the customer bought; that if the customer purchased the character of goods manufactured by the syndicate from others it was not entitled to the discount; and that, therefore, the prices given to the preferred customers with a 10 per centum discount were given in a controlled market.

The importer contends first, that since the single reappraising judge arrived at the same value as that found in the test case, and since upon appeal the First Division of the United States Customs Court made a similar finding, its judgment should be affirmed. The importer argues that under the statute as affected by said resolution, both of which will be more particularly discussed later, the value found in the test case must be accepted as the dutiable value in the duress cases. The second contention of the appellee, importer, is that even if this view is not entertained by this court in this appeal, there is substantial evidence in the record which supports the finding of the trial court that the said 10 per centum discount was freely offered to all purchasers in a market not controlled, as is contemplated by subsection 3 of section 402 of the Tariff Act of 1930.

In reappraisement proceedings this court is confined in its review of the judgment of the Customs Court to questions of law only, and if there is any substantial evidence in the record which sustains the judgment appealed from, the same will not be reversed. If appellee's first contention is not agreed to, then our duty here involves only a determination as to whether or not there is any substantial evidence in the record which supports the judgment appealed from, and we need not and do not express any view as to the conclusion at which we might arrive if we were to weigh all competent evidence found in the record.

The first question to decide is whether or not the appellee is right in its contention that the final appraised value in the test case must be accepted as the final appraised value in the duress cases. This involves a consideration not only of section 503 (b) of the Tariff Act of 1930, but of the said House Joint Resolution 336.

Section 503 (b) reads:

(b) ENTRIES PENDING REAPPRAISEMENT.—If the importer certifies at the time of entry that he has entered the merchandise at a value higher than the value as defined in this Act because of advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement, and if the importer's contention in such pending cases shall subsequently be sustained, wholly or in part, by a final decision on reappraisement or re-reappraisement, and if it shall appear that such action of the importer on entry was taken in good faith, the collector shall liquidate the entry in accordance with the final appraisement.

It will be noticed that the last clause in the section states that "the collector shall liquidate the entry in accordance with the final appraisement."

This court held in a number of cases, not necessary to cite here, that said section 503 (b) required that the final appraisement referred to was the final appraisement in the test case. Finally in *United States* v. *Friedlaender Co.*, 19 C. C. P. A. (Customs) 334, T. D. 45498, this court held that in cases of duress entries, appraisement should be held in abeyance until after decision in the test case, and that then the appraiser should follow the final decision in the test case. The court stated that it recognized the administrative difficulty caused by the delay in the appraisement of duress cases, but held that such difficulty was a matter for legislative remedy rather than judicial interference. Thereafter, the President approved said House Joint Resolution 336, which resolution reads as follows:

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That it was and is the true intent and meaning of section 503 (b) of the act entitled "An act to provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor, and for other purposes", approved June 17, 1930, and of the concluding provision of section 489 of the act entitled "An act to provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, and for other purposes", approved September 21, 1922, that imported merchandise entered in accordance with the provisions of said section 503 (b) and the concluding provisions of said section 489 *shall be appraised and reappraised in the same manner as though the merchandise was not so entered; that the appraisement and reappraisement of such merchandise shall have the same force and effect as in the case of merchandise not so entered;* and that entries covered by certification of the importer as provided in said section 503 (b) and the concluding provision of said section 489 *shall be liquidated in accordance with the final appraised value of the merchandise covered by such certificates.* [Italics except introductory clause ours.]

The Committee on Ways and Means of the House, in reporting the resolution to the House of Representatives, stated that the pur-

pose of the resolution was set forth in the letter which accompanied its report, which letter was from the Secretary of the Treasury to the chairman of the committee. In the letter, attention was called to the fact that the effect of the holding of this court in the *Friedlaender Co.* case, *supra* (that the appraisements in duress cases should be suspended until the test case had been decided), was that the packages designated for examination by the appraiser, which could not be released until after the final decision, were fast accumulating, and that additional storage facilities would have to be provided, unless by legislative enactment the appraisement of the merchandise in duress entries was expedited. In the above resolution it will be noted that the following language was used:

That it was and is the true intent and meaning of section 503 (b) * * * that imported merchandise [in duress entries] * * * shall be appraised and reappraised in the same manner as though the merchandise was not so entered; that the appraisement and reappraisement of such merchandise shall have the same force and effect as in the case of merchandise not so entered; and that entries covered by certification * * * shall be liquidated in accordance with the *final appraised value of the merchandise covered by such certificates.* [Italics ours.]

It is contended by the importer that by said resolution it was not intended by the Congress to change the provisions of section 503 (b) of the Tariff Act of 1930 so as to require that the final appraised value of the duress case should be accepted as the dutiable value in duress cases, but that the only purpose of the resolution was, in substance, to permit reappraisements to proceed and thereby avoid warehouse congestion. The single reappraising judge and the division in the instant case disagreed with this contention.

It seems to us that the contentions of the appellee in respect to the effect of said resolution are fallacious. Obviously, so to hold would be to bring about anomalies more regrettable in character than those brought about by said section 503 (b) before the resolution was passed. It is our view that Congress not only intended by said resolution, which amounts to an amendment of section 503 (b), Tariff Act of 1930, and the latter portion of section 489, Tariff Act of 1922 (*Koshkonong* v. *Burton*, 104 U. S. 668), to rid the warehouses of congestion but also to require that duress-entered goods should be appraised and reappraised in the same manner as if they were not entered under duress (and the statute so plainly states; see *United States* v. *Malhame & Co.*, 24 C. C. P. A. (Customs) 448, T. D. 48911, decided January 25, 1937, and *United States* v. *F. W. Woolworth Co. et al.*, 22 C. C. P. A. (Customs) 184, T. D. 47126) and that when the appraisement of such duress-entered goods became final that the value which is therein found should be the dutiable value. It is also our view that Congress did not intend, by said resolution, to repeal or render nugatory the duress entry feature of said statutory provisions; that notwithstand-

ing the change in the law brought about by the resolution which required that the final appraised value in the duress case was to be accepted as the dutiable value, it would remain the law that upon final appraisement of the duress entry where the value was higher than the entered value, the importer might be relieved of additional duties growing out of his undervaluation referred to in said section 503, if he had won his contentions in whole or in part in the test case. Of course, it would follow that if he lost his test case, the duress entry provision would not relieve him from additional duties, if in the duress entry, upon final appraisement, it was found that his entry was lower than that contemplated by the statute.

We are not impressed with the contention that to hold that the resolution requires the acceptance of the appraised value of the duress case as the dutiable value, rather than the final appraised value of the test case, nullifies the duress entry provisions which were intended to relieve importers of the hardship of additional duties under certain circumstances. We think the duress entry provision of the statute as amended by the said resolution, when given the construction above stated, which is its plainly indicated meaning, affords a remedy by which importers may under certain circumstances be relieved of the hardships referred to.

In the light of the foregoing, it is our view that the single reappraising judge correctly admitted new evidence at the reappraisement trials in the duress entries and that such reappraising judge and the division correctly construed the said resolution and properly held that the value to be found upon final appraisement of the merchandise involved in the duress entries was the proper dutiable value.

When counsel for the importer was asked in this court to point to such evidence as he regarded as being substantial and in support of the finding of the trial court that the 10 per centum discount in controversy here was freely made to all purchasers in accordance with the statute, he called attention to that portion of the affidavit of said Chasney, Exhibit 1 in the test case, which reads as follows:

Of the total volume of wholesale business in wall paper for home consumption in the markets of England, approximately 95% is done by the said Branches of The Wall Paper Manufacturers Limited, leaving only 5% of the total wholesale English home consumption trade in the hands of the remaining 8 manufacturers who are not members of The Wall Paper Manufacturers Limited.

The 95% of the English wholesale home consumption trade in the hands of The Wall Paper Manufacturers Limited embraces the purchases of approximately 4,800 customers, of which number a majority, in excess of 51% thereof, buy in quantities not less than 20/30 pieces of each pattern, according to price, at each purchase, and that said quantity is the usual wholesale quantity in which wall paper is offered for sale by manufacturers in England; that to all of this majority buying in not less than such usual wholesale quantity there is freely allowed a discount of 10% from the prevalent list prices, and that this discount is not limited by members of The Wall Paper Manufacturers, Limited, to customers who confine

their purchases exclusively to members of our Company; *that the only customers of The Wall Paper Manufacturers, Limited, to whom the said 10% is not granted are those small buyers who do not buy sufficient bulk to justify these terms.* [Italics ours.]

It will be noticed that the affiant swore that 95 per centum of the English wholesale home consumption trade in the hands of his organization embraces the purchases of approximately 4,800 customers, of which number a majority, in excess of 51%,

buy in quantities not less than 20/30 pieces of each pattern, according to price, at each purchase, and that said quantity is the usual wholesale quantity in which wall paper is offered for sale by manufacturers in England; * * *.

and that to all of that majority, buying in not less than the usual wholesale quantities, there was freely allowed a discount of 10 per centum from the list prices. He also stated that that discount was not limited to members of his association who confined their purchases exclusively to members of his company. He further stated that the only customers of his company to whom the 10 per centum discount was not granted were "those small buyers who do not buy sufficient bulk to justify these terms."

We construe the latter statement to mean that his company does not grant the 10 per centum discount to those who buy in less than the usual wholesale quantities. Under this construction, it follows that there is some substantial evidence supporting the finding of the United States Customs Court that the 10 per centum discount was freely offered to all purchasers, etc., as required by statute, and that there had been proven a foreign-market value for the merchandise on the date of shipment, which value was the list prices less discounts of 10 per centum and 2½ per centum, plus packing. There being some substantial evidence in the record to support the findings of the First Division of the trial court, its judgment should be, and it is, *affirmed.*

LENROOT, Judge, concurs in the conclusion.

### DISSENTING OPINION

GRAHAM, Presiding Judge: Having concluded that I must dissent from the opinion and decision of the majority, I regret that the demands of a heavy calendar do not permit as extensive a discussion of the interesting points involved in this case as I might otherwise indulge. I shall, however, briefly state my reasons for dissent.

The basis of the conclusion reached by the majority must be that House Joint Resolution 336, approved June 12, 1932, T. D. 45805, operated as an amendment of section 503 (b) of the Tariff Act of 1930, and provided that after its passage and enactment into law, all duress entries must be liquidated according to the final appraised value in the duress case, instead of the test case. The construction of said section 503 and its predecessor section 489 of the Tariff Act of 1922,

has given this court a great deal of difficulty. In a series of cases, the *Beaver Products Co., Inc.* v. *United States*, 17 C. C. P. A. (Customs) 434, T. D. 43878; *United States* v. *Fuchs & Lang Mfg. Co.*, 18 C. C. P. A. (Customs) 460, T. D. 44760; *Innis, Speiden & Co.* v. *United States*, 19 C. C. P. A. (Customs) 1, T. D. 44789; *United States* v. *Friedlaender Co.*, 19 C. C. P. A. (Customs) 334, T. D. 45498; and *United States* v. *Allenby & Co.*, 20 C. C. P. A. (Customs) 80, T. D. 45703, we reached the conclusion and laid down the rule that the only method of following what apparently was the congressional intent, as indicated by said sections 489 and 503, was to defer the appraisement on duress entries until the appraisement in the test case had been made. The sections were ambiguous and uncertain, and this court attempted so to construe them as to make them workable, and to harmonize the law and the administrative practice.

After these cases had been handed down, efforts were made to obtain legislation to change this rule. Thereupon, said House Joint Resolution 336 was enacted, the ostensible purpose of the same being to prevent overcrowded warehouses and appraisers' stores, because of the pendency of duress entries without appraisement.

Obviously, to my mind, House Joint Resolution 336 is declaratory and was an attempt by the Congress to set aside the construction made by this court, and to give its own interpretation of the meaning to be given to the language of said sections 489 and 503. I am well aware of the rule, as laid down in many authorities, such as *Stockdale* v. *The Insurance Companies*, 20 Wall. 323, that a statute which may be declaratory in its language shall be construed to have a prospective operation as an amendment of existing law, if this can reasonably be done. However, I do not believe that House Joint Resolution 336 can be given any such construction. It begins with the language "That it was and is the true intent and meaning of section 503 (b)." Here is a mandate upon the courts to find that the intent and meaning of a certain statute passed by a Congress long previously, and construed by the courts, is to be as declared by a subsequent Congress. The resolution does not state that after its passage duress entries shall be appraised as if they were not duress entries, as it might do were it to be given a construction as a statute guiding customs officials in their future work, but is a demand that the courts find according to the expressed idea of the Congress enacting this joint resolution. It certainly cannot have a retroactive effect and, in my opinion, is so framed that it can be considered as nothing but a declaratory law, and hence is clearly an attempt by the legislative body to invade the province of the judicial arm of the Government. That this cannot be done is so obvious that a long time ago the Supreme Court stopped the argument of counsel upon this point, stating that it was unnecessary to argue the same. *Ogden* v. *Blackledge*, 2 Cranch. 271.

See also *United States* v. *Stafoff*, 260 U. S. 477; *United States* v. *Salberg*, 287 Fed. 208; *Union Iron Co.* v. *Pierce et al.*, Fed. Case 14,367; *Ogden* v. *Witherspoon*, Fed. Case 10,461; *Chase* v. *United States*, 222 Fed. 593, and Cooley's Constitutional Limitations, Seventh Edition, pp. 135, 136, 137.

The same rule has been announced in most of the states of the Union. A few of the authorities are *Meyer* v. *Berlandi et al.* (Minn.), 40 N. W. 513; *Smith* v. *Borough*, etc., 33 At. 371, 172 Pa. St. 121; *City of Oakland* v. *Oakland Co.*, 50 Pac. 277, 118 Cal. 160; *Lindsay* v. *U. S. S. & L. Co.*, 24 So. 171, 120 Ala. 156. However, it is unnecessary to enlarge upon this point. The rule is so well known as to require no further consideration. To sum up, if said House Joint Resolution 336 is declaratory, and is an attempted construction of the statutory language, it is void, in my opinion. Viewed by my present lights, I am of opinion it is such a declaratory act.

In *United States* v. *Malhame*, 24 C. C. P. A. (Customs) 448, T. D. 48911, said House Joint Resolution 336 was held to authorize an appraisement in the duress case, irrespective of the appraisement in the test case. No contention was made in that case, however, as to the legality of said resolution, and we did not attempt to pass upon the point above suggested by me. The court assumed that the resolution was a valid enactment.

I am of opinion that the judgment of the United States Customs Court should be reversed.