G. B. HADDOCK, Administrator, Appellant, v. M. R. MEA-
GHER, Trustee, et al., Appellees.

IN RE ESTATE OF BRIDGET J. MEAGHER.

**EVIDENCE:** Opinion Evidence—Time of Death. *When* a person
1 died is not the subject of opinion evidence.

**DEATH:** Evidence of Death—Absentees—Proceedings for Admin-
2 istration. An *ex parte* order for letters of administration on
the estate of an *absentee* (Section 3307, Code Supplement,
1913), not being granted on any finding of the death of the ab-
sentee, is inadmissible, in another and subsequent proceeding,
to prove death.

**DEATH:** Evidence of Death—Partition—Share of Absentee—Ad-
3 judication as to Death. An order turning over partitioned
property to a duly appointed trustee to be held for an absentee
does not work a constructive delivery to such absentee and an
adjudication that he was not then dead, when the order and the
proceeding relating thereto demonstrates that the interest of
the absentee was treated as contingent (depending on whether
he was then alive), and when the court at no time assumed to
determine whether said absentee was alive or dead. See Sec-
tion 4243, Code, 1897.

**DEATH:** Evidence of Death—Unexplained Absence—When Pre-
4 sumption Arises. The presumption of death, from the unexplain-
ed and continuous absence of a person for seven years, without
knowledge of his whereabouts on the part of his family and
other relatives, arises only at the *expiration* of said period.
With the aid of facts and circumstances in addition to the *ab-
sence*, a prima-facie presumption of death at an earlier period
may be established. Evidence reviewed, and held not to jus-
tify such earlier presumption.

Note: Whether the absentee died *prior* to the expiration of
said seven-year period appears to be quite immaterial in this
case, but reference to the arguments and briefs reveals the
fact that it was treated as material in the lower court and on
appeal, and the opinion is in response thereto. Reporter.

DEATH: Evidence of Death—Unexplained Absence—Presumption
—Statute in re Absentees—Effect. The *seven*-year period of
continuous and unexplained absence of a person from his usual
place of residence as a basis for the common-law presumption
of death is not lengthened to *ten* years by the statute (Section
3307, Code Supplement, 1913,) relating to administration on the
estates of *absentees*.

*Appeal from Taylor District Court.*—THOMAS L. MAXWELL,
Judge.

TUESDAY, JUNE 19, 1917.

ACTION to have a will construed, and another action
against a trustee for money in his hands which was al-
leged to belong to plaintiff's decedent. The will was con-
strued, the plaintiff's petition dismissed, and the moneys,
after payment of a legacy, ordered to be distributed among
certain devisees of testatrix. The plaintiff appeals.—*Af-
firmed.*

*William M. Jackson,* for appellant.

*James R. Locke,* for appellees.

LADD, J.—Bridget J. Meagher died testate, May 11,
1904. Her will was duly admitted to probate, and an ad-
ministrator with will annexed duly appointed. After de-
vising certain lots to her daughter, she directed that the
executor should manage the remaining estate, saying:

"I direct that my property other than as above men-
tioned shall be kept as a whole until the youngest of my
said children shall arrive at full age, and shall be managed
by my said executor, and the rents, income and profits
thereof, over and above the amounts specified in item one
hereof, and such as may hereafter be provided, be kept in-
vested in good, safe, income-producing property, until such
time of final division, and that at such time the whole there-
of shall be sold, or distributed in kind to my children then
living, in equal shares, except as hereafter provided, and in

case any of my said children shall die before the time for such distribution, leaving children surviving, then the share which would have gone to the child so deceased shall descend to such surviving children, the same as though my said child had lived to come into possession thereof under the provisions of this my will. It is my will, however, that, in the case of my son William F., that if he shall not live to come into the possession of his share of my property when the same shall be ready for distribution as above provided, the sum of $1,000, and no more, shall be paid to his child known as Iolene, if she be then living, and if she be not living, then the said sum so bequeathed to her shall remain a part of my estate, and be distributed to the survivors in equal shares as above mentioned."

Nine children survived her, the youngest being Veronica Meagher, who attained her majority on August 14, 1911. This, then, was the day the property was ready for distribution under the will, and the main issue is whether William F. Meagher died before or after that time. Shortly after that, the real estate left by testatrix was partitioned, and one ninth of the proceeds turned over to M. R. Meagher to be held for William F. Meagher, whose whereabouts were then unknown. This amounted to $3,765.65, December 29, 1914. In that year, G. B. Haddock, on petition of Maud Meagher, wife of William, was appointed administrator of his estate, and, as the trustee did not pay over the funds in his hands on demand, Haddock, after qualifying, began this suit against said trustee and his bondsman. Subsequently, suit to construe the will was begun by Haddock as administrator, joined later by B. F. Ginn as guardian of the said wife of the absentee, William F. Meagher, and his only daughter, Iolene Meagher. These two actions were consolidated. Several matters may be disposed of before passing on the main issue.

I. Several witnesses, with respect to the facts as recited above, expressed the opinion that the absentee died soon after last heard of. These facts were not the subject of expert testimony, the witnesses merely drawing their inferences from the evidence, precisely as the court must have done. It amounted to submitting the controlling issue to persons having no special qualifications to. decide—precisely what the court must have passed on in deciding the cause. As holding that this was not permissible, see *Erwin v. Fillenwarth,* 160 Iowa 210; *State v. Bennett,* 143 Iowa 214; *State v. McGruder,* 125 Iowa 741.

**1. EVIDENCE: opinion evidence: time of death.**

II. A petition by Maud Meagher, wife of the absentee, was filed in September, 1914, and in the same month, G. B. Haddock was appointed administrator of his estate, in pursuance of Section 3307 of the Code Supplement, 1913. The order of appointment recites that William F. Meagher died in 1914. This record is said to be some evidence of his death at the time recited. But the proceeding was *ex parte,* and whether William was dead was not in issue, and, therefore, neither the issue as to whether he was dead nor when he died was involved in the appointment of the administrator. *Werner v. Fraternal Bankers' Reserve Society,* 172 Iowa 504. The finding, then, cannot be regarded as an adjudication, and is without weight as evidence.

**2. DEATH: evidence of death: absentees: proceedings for administration.**

III. Suit to partition the real estate of testatrix, other than that left to her daughter Mary, was begun in August, 1911, by M. R. Meagher against the other heirs, service being had on William F. Meagher by publication. Decree of partition was entered in September following. That decree expressly found that, if William F. Meagher were living, he and each of the other

**3. DEATH: evidence of death: partition: share of absentee: adjudication as to death.**

devisees were entitled to one ninth of the estate, and that, if he were then dead, the other devisees would each be entitled to one eighth of said estate. The referee appointed by this decree sold the land, and made final distribution of the proceeds thereof on May 9, 1912. Prior thereto, on April 24, 1912, on motion of the administrator, M. R. Meagher had been appointed trustee to receive funds belonging to the absentee, and he gave the bond, as such trustee, sued on. Several days later, the administrator was ordered to pay over to the clerk of the district court the sum of $150, which had been garnished as the property of the absentee, to be held to abide further orders of the court, and in said order, the court expressly disclaimed deciding whether said absentee was dead or alive. The referee paid over to this trustee a ninth part of the proceeds of the real estate, and it is contended by appellant that in some way this transferred the constructive possession thereof to the absentee, and constituted an adjudication that he was living and entitled thereto. There are two answers to this contention :

(1) That the court did not undertake to determine in the partition proceedings, to whom the ninth share belonged, but treated the absentee's interest as contingent, reserving the same for subsequent determination, under Section 4243 of the Code, which provides that:

"Persons having apparent or contingent interests in such property may be made parties to the proceedings, and the proceeds of the property so situated, or the property itself in case of partition, shall be subject to the order of the court until the right becomes fully vested."

(2) The order appointing the trustee does not purport to pass on the ownership of the funds to be held by him, and this might not be done on an ex-parte application of the referee for such appointment. The real parties in interest were not parties to that proceeding, and therefore

not bound thereby. *Ivers, Admr., v. Ivers,* 61 Iowa 721, 722; *Barto v. Harrison,* 138 Iowa 413, at 417; *Brown v. Lambe,* 119 Iowa 404, at 405; *In re Estate of Morgan,* 125 Iowa 247; *Criley v. Cassel,* 144 Iowa 685, at 687; *Butler v. Secrist,* (Neb.) 138 N. W. 749, 750. There was no adjudication as to whom the funds in the hands of the trustee belonged to.

IV.  When did William F. Meagher die? William F. Meagher left Lenox in 1902. He had been incorrigible in school, and had become addicted to the excessive use of intoxicating liquors, indulging in periodical sprees, during which he was violent and abused his wife. He had lived apart from her for several months. They had separated. His habits had not improved prior to his departure for the West. The evidence shows, however, that his relations with his mother and brothers and sisters were agreeable, and that he entertained genuine affection for his mother, his brother Thomas, and his sister Veronica. He kept up a correspondence with the family, writing once in 3 or 4 weeks until the latter part of May or fore part of June, 1904, in the meantime being in Colorado, Nevada and California. A telegram was received from him shortly before his mother's death, stating that he was very ill in a hospital at Reno, Nevada, and, after being notified of the death of his mother, he wrote (and this was the last letter ever received from him) concerning it, and that, if he got to feeling better, he planned to go into the mountains. This was not later than the fore part of June, 1904. Thereafter, every effort to locate him failed— search for him through inquiries of attorneys, advertisements in newspapers, and by personal efforts of a sister and a brother. The hospital had no record of his death. No trace of him was ever found. Had he lived until the time of trial, he would have been 42 years of age. He may be

*(margin note:)* 4. DEATH: evidence of death: unexplained absence: when presumption arises.

alive, for only a presumption to the contrary authorizes the inference that he had departed this life. An accepted rule of evidence at common law was that, when a person has not' been heard from for many years by those likely to hear, the presumption of the duration of life ceases at the end of seven years. This presumption is only that the person is then dead, not that he died at any particular time during that period. In the absence of anything indicating an earlier death, it cannot be found that death occurred prior to the lapse of the entire period. But the termination of life at an earlier date may be found from circumstance so indicating, as those "relating to the character, habits, condition, affections, attachments, prosperity and objects in life, which usually control the conduct of men, and are the motives of their actions." *Tisdale v. Connecticut Mut. Life Ins. Co.,* 26 Iowa 170; *Seeds v. Grand Lodge,* 93 Iowa 175; *Magness v. Modern Woodmen,* 146 Iowa 1; *Sherod v. Ewell,* 104 Iowa 253; *Carpenter v. Modern Woodmen,* 160 Iowa 602.

The presumption of life continues until overcome or displaced by a more potent presumption, i. e., that of death; but this latter presumption has no retroactive force. To warrant the inference that death occurred earlier than presumed, there must be proof of such facts and circumstances connected with the person whose life is the subject of inquiry as, when submitted to the test of reason and experience, would force the conviction of death within a shorter period. *Cox v. Ellsworth,* 18 Neb. 664 (53 Am. R. 827); *Garden v. Garden,* 2 Houst. (Del.) 574; *Boyd v. New England M. L. Ins. Co.,* 34 La. Ann. 848; *Ryan v. Tudor,* 31 Kan. 366; *White v. Mann,* 26 Me. 361; *Hancock v. American Life Ins. Co.,* 62 Mo. 26; 2 Chamberlayne on Evidence, Sec. 1105 *et seq.* Judge Sanborn well states the rule in *Northwestern Mut. Life Ins. Co. v. Stevens,* 71 Fed. 253:

"The established presumption of fact from the disap-

pearance of an individual under ordinary circumstances, from whom his relatives and acquaintances have never afterwards heard, is that he continues to live for seven years after his disappearance. If this presumption was unaffected by countervailing facts, it would continue in the case at bar until August 22, 1899; but this presumption of fact is not conclusive. It may be overcome, not only when the testimony of those who saw the insured die or saw his body after his death is produced, or when he was last seen in a peril that might probably cause his death, but also when all the facts and circumstances of the case— the possible motives, if any, of the lost one to absent and conceal himself in view of approaching failure, disgrace, or punishment, his possible motives, if any,. for returning to his family and occupation, his attachments to the members of his family and his friends, his interest and prospects in his business or occupation, and the extent of the unavailing search that has been made for him—are such that they would take the case out of the category of an ordinary disappearance, and would lead the unprejudiced minds of reasonable men, exercising their best judgment, guided by the established rule that life is presumed to continue seven years after an unexplained disappearance, to the conviction that death had intervened at an earlier date."

The evidence in this case is meager. The absentee's social relations were not such as to impel his return to Lenox. His wife had left him. His habits had been such as to require interference by the local peace officers. His course of life among his neighbors and his relatives, and with his wife, had not been such as were likely to induce him to return, and, in leaving, he is not shown to have expressed any such purpose. He was aware that his mother was dead, and his attachment to brothers and sisters had not been strong enough to restrain him from wandering. Though he wrote about being ill at the hospital, no record

thereof could be found, and no trace of him at Reno could be discovered. If he went into the mountains, no inference of an earlier death than presumed is to be drawn therefrom. Though he must have known that his mother had property, there was no showing that he was aware of how it was disposed of in the will, and, if he were, the delay of over seven years before he might enjoy his share would not be likely to appeal to a man of his character. The circumstance that, in the two years since leaving home, he had wandered in three states tends to explain the failure of the search made, and warrants the inference that he might have continued going from place to place, and this is strengthened by the circumstance that no trace of him or his remains could be found at Reno. In his last letter, he refers to his sickness only with reference to his plan if he should get better. He was not shown to have had any organic disease, and no ground appears for inferring that his illness proved fatal, other than his omitting to write. We are of opinion that the evidence was not sufficient to justify a finding that he departed this life earlier than presumed by law.

V. Appellant contends that, under Section 3307 of the Code Supplement, 1913, death is not to be presumed in a case like this in seven years, but only on the unexplained absence of ten years. That section reads:

5. DEATH: evidence of death: unexplained absence: presumption: statute *in re* absentees: effect.

"When a resident of this state owning property therein, or any person who may have been a resident of this state, has acquired or may hereafter acquire property or property rights within the state, absents himself from his usual place of residence and conceals his whereabouts from his family without known cause for a period of seven years or any such person who has gone to parts unknown for a period of ten years, a petition may be filed in the district court of any county where such property or a part thereof is sit-

uated, setting forth such facts, by any person entitled to administer upon such absentee's estate if he was known to be dead, and setting forth the names of the persons who would be the legal heirs of the absentee if he were dead, so far as known, and praying for the issuance of letters of administration upon such estate; thereupon, said court shall prescribe a notice addressed to such absentee and heirs named, and order the same to be published in a newspaper published in said county to be designated by the court, once each week for eight consecutive weeks, and which shall be served personally upon all the heirs residing within the state in the manner, and for the length of time as is required for the service of original notices, proof of the publication and service of which in manner and for the time ordered shall, at the expiration of said period be filed with said petition, and thereupon if such absentee fails to appear, the court shall hear the proof presented, and if satisfied of the truth of the facts set forth in the petition concerning the absentee, shall order letters of administration upon the estate of such absentee to issue as though he were known to be dead. The court shall also hear proof and determine who the legal heirs of such absentee are and their respective interests in such estate."

Two classes are contemplated by this statute: (1) One coming within the description of him who "absents himself from his usual place of residence and conceals his whereabouts from his family without known cause for a period of seven years;" and (2) one coming within the description of him who "has gone to parts unknown for a period of ten years." Plainly enough, the absentee is in the first class. Though he may have departed without purpose of returning, he kept up correspondence with his family until shortly after his mother's death, and, though his wife and daughter and a brother and sister continued to live at Lenox, none knew of his whereabouts. He then absented

himself from his usual place of residence in this state, and he thereafter concealed himself from his family without known cause. But when any person, a resident, or who may have been a resident, without more, even though there were none who would be likely to hear from him or know his whereabouts, "has gone to parts unknown for a period of ten years," then the presumption of death so far arises that an administrator may be appointed for property had or by him acquired in this state. In such a case, the presumption of death might not arise under the common-law rule of evidence, and this portion of the statute was evidently enacted in order to conserve any property for those who would be entitled thereto in event of the absentee's death. The section does not purport to deal with the rule of evidence fixing the period of absence within which death might be presumed, but merely the conditions on which administration will be granted and distribution ordered. As William F. Meagher departed this life some months before the estate was ready for distribution, the court rightly decreed that his daughter, Iolene, was entitled to $1,000 only, and that the remainder of the estate should be distributed to the other children of testatrix, and to the heirs of any who are dead.—*Affirmed.*

Gaynor, C. J., Evans and Salinger, JJ., concur.