W. C. RENNER, Administrator, Appellee, v. MODEL LAUNDRY, CLEANING & DYEING COMPANY et al., Appellants.

**MASTER AND SERVANT:** Workmen's Compensation Act—Right of
1 **Subrogation Against Third Party.** An employer under the Workmen's Compensation Act, or his insurer, who justifies a refusal to pay compensation to an injured employee on the ground that the employee has been paid for his injury by a third party wrongdoer, must *affirmatively* show that the money received by the employee from such third party was, in legal effect, a *recovery of damages* on account of said injury. This essential fact may not be *inferred* from proof that the employee, in consideration of a sum of money, has agreed "not to sue" said third party on account of said injuries.

**MASTER AND SERVANT:** Workmen's Compensation Act—Allowable
2 **Procedure.** Notwithstanding the power of the industrial commissioner to disregard the technical rules of legal procedure, he may not place upon an employee the burden to negative a fact which the law clearly requires the employer to affirmatively establish.

**MASTER AND SERVANT:** Workmen's Compensation Act—Right of
3 **Subrogation.** No agreement between an injured employee and a

third party wrongdoer will deprive the employer or his insurer of the right of subrogation, as provided by statute.

RELEASE: Covenant "Not to Sue." A covenant by an injured person that, in consideration of money paid to him by another, he will "not sue" such other on account of such injury will not, in and of itself, be construed as a concession by the one paying the money that he was liable for said injury, nor as any evidence that the covenantor was making a claim that the person paying the money was so liable.

*Appeal from Black Hawk District Court.*—GEORGE W. DUNHAM, Judge.

### SEPTEMBER 30, 1921.

ACTION at law to recover compensation under the Workmen's Compensation Statute. Judgment for plaintiff, and defendants appeal. The material facts are stated in the opinion.—*Affirmed.*

*Johnson, Donnelly & Swab,* for appellants.

*Pickett, Swisher & Farwell,* for appellee.

WEAVER, J.—On July 25, 1917, A. B. Bodine, since deceased, was an employee in the service of the defendant laundry company, and in pursuance of such employment was driving a laundry wagon in the streets of the city of Waterloo. While he was thus engaged, a collision occurred between the wagon and a street car operated by the Waterloo, Cedar Falls & Northern Railway Company. In this collision, Bodine was severely injured. Soon after the injury, the insurance carrier, the Fidelity and Casualty Company, undertook to pay the injured employee compensation at the rate of $7.61 per week, and did pay him at that rate for a period of about three months. Thereafter, said company refused to make further payments, alleging as grounds for such refusal that Bodine had made a settlement with the street railway company for the same injuries, and received payment therefor to the amount of $750,

1. MASTER AND SERVANT: Workmen's Compensation Act: right of subrogation against third party.

being a sum in excess of the amount which the employee could recover. as compensation under the statute; and that, because of such settlement with the railway company, the employer and his insurer are both released from further liability.

Upon defendant's refusal to make further payment, Bodine applied to the state industrial commissioner for the appointment of a committee of arbitration to consider his claim. After hearing the evidence, two of the committee of three united in finding and reporting that:

"Were it not for the connection of the Waterloo, Cedar Falls & Northern Railway Company with the case, and the payment by it to claimant on account of his injury, the claimant would be entitled to receive from defendant compensation at the rate of $8.38 per week, beginning with the date of the accident and continuing 105 weeks."

In addition to such statement, the majority of the committee further found that, because of the payment by the railway company to the claimant, the compensation which would otherwise be his due from the defendants should be reduced or diminished by the sum of $750. The third member of the committee, Judge Williams, filed a minority report, dissenting from the conclusion so announced. The claimant having filed a petition for review, the matter was reheard by the industrial commissioner, who sustained the majority report of the committee. It should also here be said that, pending this appeal to the commissioner, the claimant, Bodine, died, and the administrator of his estate, W. C. Renner, was substituted as plaintiff. Further appeal was prosecuted by the administrator to the district court, which, upon consideration of the record, reversed the ruling of the commissioner, and entered judgment for the plaintiff for the full amount of unpaid statutory compensation which had accrued up to the date of Bodine's death, without any deduction on account of the money received by the deceased from the railway company.

From that judgment, defendants have appealed to this court.

The evidence, as disclosed by the record, is very brief. It is conceded that Bodine was one of the employees of the laundry company, and that, while engaged in its service, he suffered an

injury in a collision which occurred between the wagon driven by him and a street car. It is also conceded that, after the collision, the injured man was visited by a representative of the railway company, with whom he entered into a written agreement, which, after a formal preamble, provides as follows:

"The railway company in consideration of the said Bodine covenanting not to sue the said railway company or any of its officers, servants or employees for or on account of injuries sustained by him in the collision referred to in the preamble hereof, hereby agrees to pay to the said Bodine the sum of seven hundred and fifty ($750.00) dollars and the said Bodine in consideration of the payment to him by the said railway company of the said sum of seven hundred and fifty ($750.00) dollars hereby covenants and agrees not to sue the said railway company or any of its officers, servants or employees for or on account of the injuries or damages sustained by him in the aforesaid collision, and the said Bodine hereby acknowledges receipt of the said sum of seven hundred and fifty ($750.00) dollars from the railway company. It is hereby expressly understood and agreed that this instrument is not a release of the said railway company nor to said Bodine's employer or the insurer of said employer under the Workmen's Compensation Act of the State of Iowa, nor to any other corporation, firm, or person, but is simply a covenant not to sue the said railway company, its officers, servants or employees, on account of the injuries above mentioned."

The consideration of $750 mentioned in the writing was received and retained by Bodine. Prior to this transaction, the laundry company's insurer, the defendant Fidelity & Casualty Company, as we have already said, had undertaken to pay Bodine compensation at the rate of $7.61 per week, and did make such payments for a period of three months, when it refused further payment on the ground that it had been relieved of further liability, to the extent at least of the sum which Bodine had received from the railway company. Aside from the bare fact that there was a collision between the wagon and the car, and that Bodine sustained an injury therein, there is no testimony as to the attending facts and circumstances; and if either party to such collision was chargeable with negligence or

wrong, we are without any evidence of it. There is no evidence that Bodine made or presented any claim against the railway company on account of his injury, and as to the intention of the parties in making the agreement there is no showing, except as it is revealed in the writing itself and the testimony of the railway's representative, who says: "The purpose of the covenant not to sue was not to settle the question of liability." The industrial commissioner adopted the finding of the majority of the arbitration committee, that the claimant was entitled to receive compensation under the statute, but that, since he had received $750 from the railway company, the compensation so payable should be reduced by that amount. In reaching this conclusion, the commissioner held that the burden was upon the claimant to establish the fact that the money received from the railway company was not a recovery of damages, within the meaning of the statute, and laid down the proposition that the payment of the money by the railway company was a "definite recognition of liability."

With the foregoing statement of the substance of the record and the attitude of the parties, we turn to the questions of law so presented.

I. The authority for reducing the compensation due to Bodine, as was done by the arbitration committee and industrial commissioner, is to be found, if at all, in that part of the Compensation Statute which provides as follows:

"Where an employee coming under the provisions of this act receives an injury for which compensation is payable under this act and which injury was caused under circumstances creating a legal liability in some person other than the employer, to pay damages in respect thereof: (a) The employee or beneficiary may take proceedings both against that person to recover damages and against the employer for compensation, but the amount of the compensation to which he is entitled under this act shall be reduced by the amount of damages recovered. (b) If the employee or beneficiary in such case recovers compensation under this act, the employer by whom the compensation was paid or the party who has been called upon to pay the compensation, shall be entitled to indemnity from the person so liable to pay damages as aforesaid, and shall be subrogated to the rights of

the employee to recover therefor." Section 2477-m6, Code Supplement, 1913.

It will be seen from the reading that the first or introductory sentence of the section prescribes the condition under which its provisions shall have application, and that is, an injury to the employee *"caused under circumstances creating a legal liability in some person other than the employer, to pay damages."* The remainder of the section provides that, (a) when such situation appears,—that is, "legal liability in some person other than the employer,"—the injured employee may proceed against his employer for compensation under this statute, and at the same time maintain an action against the other person for damages as at common law; but in such case, the compensation recoverable from the employer is to be reduced by the "amount of damages recovered" from the third person. It further provides (b) that, if the employee recovers compensation from his employer under such circumstances,—that is, where the injury was caused under *circumstances creating a legal liability in some other person* to pay damages,—the employer or insurer who has been called upon to pay compensation "is entitled to indemnity *from the person so liable* to pay damages, and shall be subrogated to the right of the employee to recover therefor."

Counsel on either side have cited and discussed the rules and principles bearing upon the effect of a release of or satisfaction by one or more joint tort-feasors, and of the common law or equitable right of subrogation in certain cases; but, except as these rules and principles may be thought to afford aid by way of illustration or analogy, they are somewhat beside the question with which we here must deal. The rule that the release of one joint tort-feasor works the release of all has its root and origin in the generally accepted doctrine that joint tort-feasors are jointly and severally liable for the damages resulting from their tort, and the law will not undertake to apportion such liability between the individual wrongdoers. The injured party may pursue one or all, and may recover full satisfaction from any one of them; but, as he is entitled to only one satisfaction for a single wrong, his release given to, or his recovery of such satisfaction from, one operates as a release of all the wrongdoers.

The instant case does not come within this rule, for here there is no joint tort—no common liability. Neither is there any such relation between the parties that Bodine's employer or its insurer can, independent of the statute, rightfully demand subrogation to Bodine's right of action, if any he had, against the railway company. In short, if the employer or its insurer has or ever had any right to maintain an action against the railway company, or to claim the benefit of any payment by the railway company to Bodine, it must be found in the terms of the statute we have above quoted. That statute is to be read into the contract of employment, and if the proved or conceded facts are such as are there provided for, then the defense pleaded is to be held good; otherwise, it is without merit. What, then, does the statute prescribe as the basis or foundation of the right which the appellants assert? The opening declaration of the statute states the first essential condition to be that the employee's injury has been *"caused under circumstances creating a legal liability in some person other than the employer."* If that condition appears, the employee, while claiming compensation from his employer, may maintain a separate action at common law, to enforce the "legal liability" of such person other than the employer; but, if he establishes such claim, the amount of compensation to which he is entitled from his employer is to be reduced by the amount of damages recovered from "the other person." It is then further provided that, if the employer (or insurer) has paid the compensation provided for by the statute, he is entitled to indemnity from the *person so liable to pay damages,* and shall be subrogated to the *rights of the employee* to recover therefor. The provisions of the quoted section of the act, Section 2477-m6, Code Supplement, are not in the least ambiguous, obscure, or uncertain. The language is not open to construction. The rights and remedies therein provided may be exercised or invoked only where the injury to the employee has been "caused under circumstances creating a legal liability in some person other than the employer." Without this foundation, there is nothing upon which to construct the pleaded defense. This record is, as we have before noted, wholly without evidence of the "circumstances" under which Bodine was injured, except the simple fact that it occurred in a collision between the wagon

he was driving and a street car. There is neither allegation nor proof of any fact or facts to indicate "legal liability" of the railway company. This alone would seem a decisive objection to the position of the appellants.

II. In considering the question as to the application of this statute to the issue raised by the defendants' answer, the industrial commissioner held that, the claimant having admitted the receipt of money from the railway company, the burden was upon him to show that it was not a recovery of damages; and that, as he has failed in this respect, defendants are entitled to have his compensation from them reduced by that amount. Such also is, in substance, the position taken by the defendants on this appeal. In this the commissioner and the appellants are manifestly in error. The claimant's right to compensation had been established, and was conceded by the defendants; but in this proceeding they advance an affirmative plea by which they seek to be relieved, in whole or in part, from its payment. As an affirmative plea in avoidance of an admitted obligation, the burden is upon them to prove that the claimant has, in fact, "recovered damages" from the railway company, and not upon the claimant to negative such alleged fact. That the statute clothes the industrial commissioner with wide discretion to inquire into the "substantial rights of the parties," and emancipates him from observance of the common law or statutory rules of evidence and from "technical and formal rules of procedure," is to be conceded; but it is to be observed that this relates solely to manner and methods of procedure and to common law and statutory rules of evidence, and the commissioner is thereby authorized to make his official investigations and inquiries in a manner best suited to ascertain "the substantial rights of the parties." In manner and method of making such inquiries, the commissioner is not to be hampered by formal or technical rules of procedure or of evidence, but may proceed in the manner which he believes best suited to develop the truth and thus to protect the substantial rights of the parties. But he is not clothed with power or authority to change or ignore the substantive law of the jurisdiction. As bearing on this point, see the case of *Carroll v. Knickerbocker Ice Co.,* 218 N. Y. 435 (113

2. MASTER AND SERVANT: Workmen's Compensation Act: allowable procedure.

N. E. 507), where the court, construing a statute quite like our own in this respect, says:

"The act may be taken to mean that, while the commission's inquiry is not limited by the common law or statutory rules of evidence or by technical or formal rules of procedure and it may in its discretion accept any evidence that is offered, still, in the end, there must be a residuum of legal evidence to support the claim, before an award can be made. * * * 'There must be in the record some evidence of a sound, competent, and recognizedly probative character, to sustain the findings and award made, else the findings and award must, in fairness, be set aside by the court.' "

If, as we hold, the claim or defense made by appellants for a reduction of the compensation allowed to Bodine must have its foundation in a state of facts presented by the statute, then the right of the claimant to insist upon the laying of such foundation before he is compelled to submit to such deduction is one which upon no theory of the law can the arbitration committee or the commissioner or the court properly deny or ignore. The very statute (Chapter 270, Acts of the Thirty-seventh General Assembly) which confers upon the commissioner the enlarged discretion as to procedure and evidence makes provision for appeal from his rulings and decisions, and gives the court express authority to set the same aside: (1) When he acts without or in excess of his powers; or (2) when the order or decree was procured by fraud; or (3) when the facts found by him do not sustain his order or decree; and (4) when there is not sufficient competent evidence to warrant him in making the order or decree appealed from. The district court in this case evidently reversed the ruling of the commissioner on the fourth of these statutory grounds; and, for the reasons already stated, as well as for those we shall consider in the following paragraphs, we think the court did not err.

III. The arbitration committee and the industrial commissioner were evidently of the opinion that the money paid by the railway company to Bodine was received by him in payment of the damages he sustained, and that the written instrument executed was intended to be and is a release and discharge of

3. MASTER AND SERVANT: Workmen's Compensation Act: right of subrogation.

the railway company from all liability, and that the covenant not to sue was a disguise adopted to conceal the real agreement; or, to use the commissioner's language, the covenant is a mere "jugglery of words and phrases," a piece of "shrewd phraseology," intended to deprive the employer of his right to a deduction from the compensation, and to "sacrifice the employer's right of action against the railway company." Stated in other words, the theory appears to have been: (1) That there is no such thing as a valid covenant not to sue, except as it be held the equivalent of a release and satisfaction; and (2) that to sustain the covenant in accordance with its terms is to deprive appellants of their right of subrogation. Taking up these propositions in inverse order: As to the contention urged by appellants that the covenant not to sue has the effect of a release or full discharge, and thus defeats the defendants' right of subrogation, it is to be said that, if appellants had any right of subrogation, under the terms of the statute (a situation not yet made to appear), it was not within the power of Bodine to deprive them of it by any agreement between him and a "person other than his employer." A like question has often arisen in actions upon policies of insurance which reserve to the insurer the right to be subrogated to the insured for the recovery of damages against third persons legally liable therefor, and it is quite uniformly held that, in such case, a settlement between the insured and the third person, without the insurer's express or implied consent, will not defeat the right of subrogation. See *Monmouth C. M. F. Ins. Co. v. Hutchinson*, 21 N. J. Eq. 107; *Hart v. Western R. Corpn.*, 54 Mass. 99, 100; 19 Cyc. 895, and note; and *Chickasaw County F. M. F. Ins. Co. v. Weller*, 98 Iowa 731, 734. The rule is clearly stated in the last-cited case, where we said:

"If insured buildings or other property be destroyed through the negligence of some person other than the owner, the insurance company, upon payment of the loss, will be subrogated to the right of the owner to recover from the wrongdoer. *The insured cannot bar the insurer's right of action by executing a release of damages to the wrongdoer.*"

It follows of necessity that, if the effect of the claimant's covenant not to sue is to bar his right to receive the payments

allowed him under the Compensation Act, it must be for some better reason than that he thereby deprived appellants of their right, if any they had, to pursue their remedy against the railway company.

The decisions of this court in *Kennedy Bros. v. Iowa State Ins. Co.*, 119 Iowa 29, and *Southern Surety Co. v. Chicago, St. P., M. & O. R. Co.*, 187 Iowa 357, are in no manner inconsistent with this holding. In the *Kennedy* case, plaintiffs sued upon a policy which, by its express terms, was to be void and of no effect if it should appear that the owner of the insured property had or should have any contract whereby a third person should not be liable for any act or neglect in causing the fire. On trial, it appeared that the property destroyed was a grain elevator, on ground leased from a railway company, under an agreement by which the owner assumed all risk of loss by fire, and agreed to save the railway company harmless from all liability for damage or loss by fire, however it might originate. That was the contract under which plaintiffs were occupying the property when the policy was issued, and when the loss occurred. Under such circumstances, it was correctly held that the insurance was forfeited. In the *Southern Surety Company's* case, the injured employee, as he lawfully might, sued the railway company by whose neglect he was injured, and recovered a judgment for damages to the amount of $2,300, which was paid and discharged. After that case had been tried, and judgment recovered and paid, the employer's insurer, which had paid the employee the sum of $572, under the Compensation Act, sued the railway company for reimbursement, instead of demanding a repayment from the employee, who had collected full damages from the company. In a very clear and convincing opinion prepared by the late Mr. Justice Gaynor, we held that the injured employee was authorized by statute to sue the railway company for the damages sustained by him, and that it must be presumed that the judgment recovered by him was for the full amount for which the company was liable, and that, such judgment having been paid, the company could not be subjected to further liability, at the suit of the employer or insurer. In other words, the employer and insurer could not stand by while the employee prosecuted the party primarily liable to judgment, and collected

the damages in full, and thereafter themselves compel the company to pay additional damages. In that case, unlike the one now at bar, there was no question but that the employee had recovered full damages from the "person other than his employer," and that the injury to the employee was received under circumstances creating a legal liability therefor in such other person. The payment of that judgment necessarily released the railway company from further liability, and left the insurer's reimbursement for compensation paid the employee a matter for adjustment between them. The employee, having received the compensation, and having also recovered full damages from the railway company, would, perhaps, be liable as a trustee for the benefit of the insurer to the amount of the payments made by the latter. That rule has no application here, unless we hold with appellant that the consideration paid Bodine for his covenant not to sue is a recovery of damages within the meaning of the law.

IV. It is argued for appellants that, while the statute does, in terms, make the existence of circumstances creating legal liability in some person other than the employer essential to its application, yet, if it appear that the injured employee has, for a consideration received, covenanted not to sue any third person, such fact, without other evidence, affords sufficient ground for holding that the receipt of such consideration by the employee is a "recovery of damages," which entitles the employer and insurer to a *pro tanto* reduction in their payment of compensation under the Workmen's Act. True, counsel do not state their proposition quite so baldly as this, but, under the record as here presented, it is the one on which the appellants must stand or fall; for, as we have said, and repeat, there is not a scintilla of evidence tending to show "circumstances creating a legal liability" in the railway company, or to show that any claim or charge of such liability was made against it. True, a few cases may be found where an injured person, having executed to a third party a formal release acknowledging payment and satisfaction of all claims for damage on account of injuries received, has been held thereby to release all others, without regard to the question whether the party receiving the release was or was not legally liable; but we think the books are without any

precedent for giving that effect to a covenant not to sue. And assuredly, no court has yet gone to the length of holding that an employer who seeks to be excused from performance of his statutory obligation to pay compensation to his injured· employee may be granted that relief without proof of the facts which the statute makes essential to such relief. That, even at common law, and under the strict common-law rules as to the effect of a release, the question whether the person released was in any manner legally liable to the releasor was a material inquiry, is well established. Substantially the only exception to this rule is to be found in cases where a strict formal release, under seal, has been given, thus excluding all other inquiry into the merits, a rule from which the courts both of England and of this country have largely broken away. *Bloss v. Plymale,* 3 W. Va. 393; *Matheson v. O'Kane,* 211 Mass. 91; *Edens v. Fletcher,* 79 Kan. 139; *Gilbert v. Finch,* 173 N. Y. 455.

In the early case of *Turner v. Hitchcock,* 20 Iowa 310, an oft-quoted authority upon the effect of a release to one wrong-doer upon a plaintiff's right to sue others, the plaintiff had sued a large number of persons jointly for an alleged trespass. Before the case came on for trial, the plaintiff notified a defendant, one Johnson, that no personal claim was made against him, and that plaintiff relinquished all claim for judgment against him. Because of this, the trial court held that all the defendants were discharged. Plaintiff also requested the court to instruct the jury: First, that, unless it was found that Johnson was one of the trespassers, his release did not discharge the other defendants; and second, that the plaintiff may discharge a defendant who is not a trespasser, without discharging the trespassers. These requests were denied, a ruling which this court, speaking by Dillon, J., held to be error, saying:

"It is the opinion of this court that these last two instructions ought to have been given. It was held in *Wilson v. Reed,* 3 Johns. 175, that a release to a person as a joint trespasser who is not, in fact, liable to the releasor, will not destroy the right of action against those who are liable. This must be so, in the nature of things."

Quite in point, also, is *Thomas v. Central R. Co.,* 194 Pa. 511 (45 Atl. 344). There the plaintiff was suing the Central

Railroad Company for the death of an engineer of the Reading Railroad Company, who was killed in a collision between trains. The defendant offered to show that the administrator had settled with and released the Reading Railroad Company, but the evidence was excluded. On appeal, it was held that the ruling was not erroneous, because "there was no evidence that the Reading Railroad Company was negligent," and the evidence of a release of that company "was, therefore, irrelevant."

In *Dufur v. Boston & M. R. Co.*, 75 Vt. 165 (53 Atl. 1068), the plaintiff was injured under circumstances indicating joint liability therefor on part of one Allen and the Boston & Maine Railroad Company. Plaintiff settled with Allen, and, in consideration of a money payment of damages, gave him a written release, under seal. Later, he brought suit against the railway company, and the court, while holding that there was clearly a joint tort, and that the release and satisfaction given to Allen inured to the benefit of the railway company, discussed the law of such cases as follows:

"Upon the allegations in the declaration, the plaintiff clearly had a right of action against the defendant, whether Allen was liable or not; and, to defeat the action, the defendant must allege facts showing that it was not liable, or that it and Allen were jointly liable, and that the plaintiff released Allen from such liability. If Allen was never liable, then the release given him did not affect the defendant's liability. In that case, the payment by Allen would be the act of a stranger to the cause of action."

Among the precedents relied upon by appellant is *Leddy v. Barney*, 139 Mass. 394 (2 N. E. 107). There the court uses this language:

"If the *claim is made against one* and released, all who may be liable are discharged, whether the one released was liable or not."

In further elucidation of the rights of the parties, the court says that, to make the release operative in favor of the defendant Barney, "the identity of the cause of action against the defendant with a cause of action against Chace [the party released] must be shown. This may be done by showing that plaintiff *had the same cause of action against both,* as that they

were both, in fact, concerned in the act complained of, so that whatever action would lie against one would also lie against the other, or by showing that liability for the same act *was. claimed by the plaintiff against both,"*—thus making a case which is widely out of parallel with the one before us. Moreover, as we shall see, this court has expressly refused to follow the authority of the *Leddy* case.

In a later case, more nearly in point, *Pickwick v. McCauliff,* 193 Mass. 70, the same court, after referring to the general rule that a release to one may effect the release of all, adds:

"But in order to have that effect, we think that the party to whom the release is given must be one against whom an action would or might lie, and *that a claim has been made for or on account of the alleged tort.* It is not necessary that it should appear that he was, in fact, liable."

To the same effect is the decision in *Kentucky & I. B. Co. v. Hall,* 125 Ind. 220 (25 N. E. 219). There the plaintiff, a brakeman on a train operated by the Louisville, Evansville & St. Louis Railroad Company, was injured in a collision between his train and one operated by the defendant Bridge Company. Charging negligence against the latter company, he sued for damages. Before the case was tried, plaintiff had executed a release to his employer, the railway company; but the court refused to give any effect to such release in favor of the defendant, basing such ruling on the fact that the record failed "to show that plaintiff ever made any demand against the railway company for damages on account of such injury, or *ever claimed that it was* in any way responsible for the accident." To the same general effect, see *Iddings v. Citizens' St. Bank,* 3 Neb. (Unof.) 750 (92 N. W. 578); *Missouri, K. & T. R. Co. v. McWherter,* 59 Kan. 345; *Wardell v. McConnell,* 25 Neb. 558; *Atlantic Dock Co. v. City of New York,* 53 N. Y. 64; *Seiber v. Amunson,* 78 Wis. 679 (47 N. W. 1126).

The principle was recognized by this court again in *Snyder v. Mutual Tel. Co.,* 135 Iowa 215, 227. The plaintiff there was denied recovery because, in consideration of a payment of a sum of money, she had, in formal writing, accepted it in full of any and all claims and demands growing out of the death of her husband. In so deciding, however, the court was careful to say:

"Without doubt, there may be technical releases or covenants not to sue, which, however effectual in favor of the person thus relieved from liability, are not conclusive as to another charged with the same wrong; *it appearing that the person thus released was in no way liable.*  *  *  *  It is also true that a mere gratuity paid by one *as to whom no claim is asserted* and no liability contemplated will not be a satisfaction of a claim against the one liable for an injury."

If there be any difficulty in reconciling all the precedents bearing on this point,—and it must be admitted there is,—this court has definitely announced its own stand thereon. In *Ryan v. Becker,* 136 Iowa 273, Becker sued Ryan for damages on account of an alleged tort, and recovered judgment. Later, Becker sued one McGeough for the same wrong. In this action, Becker recovered judgment, upon stipulation of the parties that a recovery should be had of $50 in "full satisfaction and settlement" of Becker's claim. This judgment was paid and discharged, and thereupon Ryan brought suit to cancel the judgment against him, on the theory that the release and satisfaction in favor of McGeough was, in law, a release of Ryan, a joint tort-feasor. Yielding to the liberalizing tendency of modern decisions, we there held that, notwithstanding the entry of judgment and the stipulated release and discharge of McGeough, it was competent for Becker to show: (1) That the McGeough judgment was not rendered on the theory of damages for the injury done to Becker; (2) that McGeough was not, in fact, liable for the tort; and (3) that there was no intent to satisfy Becker's claim against Ryan. In so ruling, we reaffirmed the holding already quoted from our early case of *Turner v. Hitchcock,* supra, and, speaking by Deemer, J., we said:

"Upon these propositions, the authorities are in seeming conflict. Some of the cases hold that one securing judgment upon a claim for damages is estopped from denying liability upon part of the party sued. Of this class are *Leddy v. Barney,* 139 Mass. 394 [and other cited cases]. While on the other side are *Wilson v. Reed,* 3 Johns. (N. Y.) 175; *Snow v. Chandler,* 10 N. H. 92; *Bloss v. Plymale,* supra; *Pogel v. Meilke,* 60 Wis. 248; *Railroad Co. v. McWherter,* 59 Kan. 345. We have adopted the latter rule for this state."

For the purposes of this case, it may be admitted that a covenant not to sue may be shown to have been intended as an unqualified discharge or release; but the burden of proof is upon the party seeking to fasten that character or effect upon the instrument, to produce evidence justifying such conclusion. See *Johnson v. Von Scholley*, 218 Mass. 454 (106 N. E. 17). There is no evidence to that effect in this record. There is no testimony having any tendency to show that the street railway company was legally liable for Bodine's injury, or that he charged it with liability or made claim upon it for damages or threatened or contemplated suit against it. Upon such a showing, it must be said, as a matter of law, that the instrument is to be given effect according to its terms.

V.   It seems to us unnecessary to extend this opinion to discuss the legal character and efficacy of a covenant not to sue. That it is a legitimate subject of contract has been affirmed over and over again by practically all the courts of our country; and that such a covenant, unless shown to have been otherwise intended, does not operate to release or discharge from liability any person other than the covenantee, is equally well settled. See *Matheson v. O'Kane*, 211 Mass. 91; *Nashville I. R. Co. v. Gregory*, 137 Tenn. 422 (193 S. W. 1053); *Musolf v. Duluth E. Elec. Co.*, 108 Minn. 369 (122 N. W. 499); *Edens v. Fletcher*, 79 Kan. 139 (98 Pac. 784); *Chicago & A. R. Co. v. Averill*, 224 Ill. 516; *Miller v. Fenton*, 11 Paige (N. Y.) 18, 20; *Gilbert v. Finch*, 173 N. Y. 455; *Miller v. Beck & Co.*, 108 Iowa 575; *Bloss v. Plymale*, 3 W. Va. 393.

4. RELEASE: covenant "not to sue."

The covenant in this case being one the legal validity of which must be conceded, the courts are bound to construe and sustain it according to its terms, in the absence of evidence impeaching its good faith, or showing that the money, receipt of which it acknowledges, was, in fact, accepted as damages, instead of consideration for his agreement not to sue the railway company. As was well suggested by the court below in reversing the finding of the industrial commissioner, the covenant not to sue was a legitimate contract, and the making of the same a sufficient consideration, if so deemed by the parties, to support the payment made. The mere fact of such payment is not a con-

cession of liability by the railway company, nor is its mere receipt by Bodine evidence that he was making or asserting any claim of liability on its part. Nor is it material that "private corporations are not charitable institutions," or material to recall that they "exist wholly and solely for the single purpose of financial gain;" for it is not impossible that corporations, not unlike many individual citizens, may believe it business wisdom to purchase immunity from the expense and trouble of a possible lawsuit, even where no liability in fact exists. The railway company in this instance was faced with the fact that Bodine had been injured in a collision with one of its cars; and, even though it may have been wholly without fault, and in no manner legally liable for such injury, and no claim or charge of such liability yet preferred, it is reasonably possible for it to have preferred taking the initiative and fending against possible trouble in that line by obtaining a covenant from the injured man not to sue. Money paid upon such consideration would be in no proper sense "damages," and its acceptance would be in no proper sense a "satisfaction" of the liability of his employer for the payment of compensation under the statute. If Bodine had been a member of some insurance organization which paid benefits to its sick or injured members, and had received a substantial sum of money from such source, no one would think of giving the appellants credit therefor, upon the statutory compensation which had been awarded to him; and yet a claim for such credit would be scarcely less reasonable than their demand made in this case. Speaking of covenants not to sue, the Minnesota court has said:

"Competent parties are fully protected in their freedom to make lawful contracts. Agreements to avoid litigation are lawful contracts. Negotiations leading to them are protected. They are both encouraged and enforced. When competent parties have written out the terms upon which they have agreed, their contract must be reasonably construed so as to carry out their intentions."

The language of the covenant in this case is not open to doubt or uncertainty. It provides in express terms that the money is paid in consideration of Bodine's agreement not to sue the railway company, its officers, servants, or employees on ac-

count of his injury. To make the intent doubly clear, it declares in terms that it is not a release of the company, or of Bodine's employer or insurer, or of any other person, but is "simply a covenant not to sue."

We cannot take it for granted that this instrument is not what it professes to be, or assume, without evidence, that the money was paid or received upon any other consideration than is there expressed.

Counsel say, however, that covenants not to sue have no place except where there are two or more joint tort-feasors; and that, as the appellants were not joint tort-feasors with the railway company, the only effect of the written instrument would be to release the railway company; and that, such being the case, the money paid, though nominally in consideration of the agreement not to sue, must be treated as a payment of damages. Neither the premise nor the conclusion is entirely sound. It is true that, as a general rule, such agreements are made use of in cases where a joint tort is claimed; but courts have frequently extended the doctrine to matters of joint contracts, and other more or less analogous cases. The statute here did vest Bodine with the right to proceed against his employer for compensation under the statute, and also, at his option, to sue any person "other than his employer," if the circumstances of his injury were such as to create legal liability in such other person. The employer and "the other person," if liable, were in no sense joint tort-feasors; yet both were, in a sense, liable to the employee for the same injury, the obligation of the one being measured by the terms of the Compensation Act, and the other by the applicable rules of the common law.

The right of Bodine to sue any person other than his employer was a mere option. He could, if he chose, rest upon the allowance to him of the statutory compensation, and his refusal to seek satisfaction at common law would work no wrong to his employer. If he could refuse to sue, without affecting his right to receive compensation, how can his mere agreement not to sue affect the relations of the parties, even though, as between him and the railway company, it may be said to operate as a release? Had he elected to sue, and had recovered and collected judgment for damages, then, as he could not be permitted to receive more

than one satisfaction, the appellants could require him to account to them for their advancements upon his compensation. But he did not sue, and there is no showing that, in covenanting not to do so, he deprived the appellants of any right or advantage which they would have acquired or enjoyed, had that covenant never been made. If Bodine had no right to recover damages from the railway company (and none has been shown), then the appellants could not obtain any better or higher right by subrogation, even though the covenant not to sue had never been made. And for appellants to be allowed credit or deduction upon the compensation payable to the claimant, it must affirmatively appear that the money received by him was, in legal effect, a recovery of damages,—a showing which has not been made.

This conclusion might well have been reached with greater measure of brevity by confining our discussion to the single proposition that appellants' right, if any, to a reduction of the compensation to Bodine is purely statutory, and that there is an entire failure on their part to lay the statutory foundation for such relief. But counsel on either side have had recourse to the wide field of inquiry into the common law of releases and covenants not to sue, a subject by no means free from the confusion of conflicting authority, and one bearing visible marks of the influences of legal evolution; and we have thought it not unwise to indulge in some latitude of discussion along that line.

We are satisfied with the correctness of the judgment below, and it is—*Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.