C. D. Royal, Consular Representative, Appellee, v. Hawkeye Portland Cement Company et al., Appellants.

**MASTER AND SERVANT:** Workmen's Compensation Act—Nonofficial Certificates as Evidence.  Extracts from foreign church records, certified to by the parish priest, under the seal of the church, may be received and given consideration in hearings under the Workmen's Compensation Act.  So held when such records bore on the issue whether a deceased employee was survived by a widow.

**EVIDENCE:** Presumptions—Continuance of Life.  Upon a showing that an employee under the Workmen's Compensation Act left wife and children dependents in a foreign country, the presumption will be indulged—nothing appearing to the contrary—that such dependents continued to live, up to the time of the arbitration award.

**MASTER AND SERVANT:** Workmen's Compensation Act—Fact Findings.  Fact findings by the industrial commissioner on supporting testimony are conclusive on the courts.

*Appeal from Polk District Court.*—J. D. Wallingford, Judge.

MARCH 13, 1923.

PROCEEDING to recover compensation for the widow and dependents of Mike Kolar, deceased employee of the Hawkeye Portland Cement Company. The Fidelity Casualty Company of New York was insurer. The committee of arbitration, the industrial commissioner, and the district court found for the claimant. From the decision of the district court this appeal is taken.—*Affirmed*.

*B. O. Montgomery*, for appellants.

*C. D. Royal* and *De Freese, Buckingham & Eaton*, for appellee.

ARTHUR, J.—I. On the 21st of October, 1921, claimant filed with the industrial commissioner an application for arbitration, stating that Mike Kolar received an injury arising out of and in the course of his employment on the 4th day of May, 1918, resulting in death, and asked compensation for the widow and three minor children of the deceased employee.

The employer answered, admitting the alleged accidental injury, resulting in death, and that said accidental injury was received by said Mike Kolar while he was employed by them, and that the injury arose out of and in the course of such employment; but denied the existence of the alleged widow and minor children at the time of the accidental death, and at the time of the hearing.

On the trial in the district court, it was stipulated by the parties "that the compensation to the dependents, if there is anyone legally competent to receive same, is the sum of $10 per week for 300 weeks."

The ultimate disputed question before the court was, and here is, narrowed to the question whether decedent, Mike Kolar, left surviving him dependents, in the person of a widow or minor children or child.

II. Appellants offered no evidence.

Claimant called Dan Kolar, a brother of decedent's, who testified, in substance, that he and his brother, Mike, were born in the same town, and lived in the same town in Austria all their lives, until they came to this country; that he came to this

country in 1913, and Mike came in 1914; that he was present and witnessed the marriage of his brother, Mike, with Sava Chalich; that, after his brother, Mike, married Sava, he lived with them in the same house; that, while he lived with them, there were born to Mike and Sava two children, who were named Gligo and Stevan; that the eldest child, Gligo, was born about a year after the marriage; that he was present at the ceremony when the children were baptized in the church; that, after he came to this country, he lived with Mike, who had preceded him; that, during that time, Mike got letters from his wife, and that he (Dan) read the letters; that he learned from the letters and from Mike that another child had been born, a girl, named Stana; that Stana was born after the first year he lived with Mike in this country; that Mike sent to his wife money regularly; that he was with him when he sent money to his wife; that he (Dan) received three letters from Mike's widow after Mike's death, one in 1919 and two in 1920; that he knew the signature of Mike's widow; that in her letters she referred to her three children; that he had received no letters from her since July, 1920; that, when she last wrote to him, she said she was living with the father of him and Mike. The witness was shown a power of attorney, purporting to be signed by the widow of decedent, dated May 9, 1921, and testified that he knew the signature of Sava, wife of decedent, and that the signature was hers.

Mike Kolar, cousin of decedent, called by claimant, testified that he had lived in the same town in Austria with his cousin, Mike Kolar; that they lived about half a mile apart, and he visited at Mike's house and Mike visited at his house; that he knew that his cousin Mike was married; that his wife's name was Sava; that he visited frequently at his cousin Mike's home after his cousin, Mike, was married; that they had two children before he came to the United States, two boys, named Gligo and Stevan; that he and his cousin Mike lived together a couple of years after Mike came to this country; that he knew of Mike's going back to the old country and returning here again; that Mike got letters from his wife, and that he (witness) read the letters, and that the letters stated that another child had been born,—a girl; that he was with Mike, and saw

him many times send money to his wife, and that he read letters from Mike's wife, stating that she received the money; that he received many letters from Mike's wife after Mike's death; that the last one he received was about a month and a half ago. The trial was in May, 1922. Witness was shown power of attorney purporting to be signed by the widow, dated May 9, 1921, and testified that the signature was that of Sava Kolar.

III.   Claimant offered in evidence some foreign documents which are styled "certificates and extracts from original records." Said documents do not purport to be true copies *in extenso* of any official record of documents. Said extracts were made by a priest. The translation of one of the certificates offered in evidence, bearing date of April 16, 1921, contains the following language:

1. MASTER AND SERVANT: Workmen's Compensation Act: nonofficial certificates as evidence.

"That she (Sava Kolar) is the wife of the deceased, Mike Kolar, house No. 91/6 in Slabinja, and is now living as a widow. * * * That she was never divorced from him, and was never married before nor after."

This certificate was exhibited in its original form to witness Dan Kolar, who read it and observed the seal upon it, which he stated was the church seal. He further stated that it was the custom in his country that the priest, in making out such papers, should place the seal of the church upon them. Respecting this document, one Dr. Zelelitch, who was consul of the kingdom of the Serbs, Croats, and Slovenes at Chicago, and whose deposition was taken by claimant, testified that the record of the parish priest would show whether the woman had remarried; that the form of the certificate might depend upon the purpose for which it was requested; that said certificate showed that it was requested by Sava Kolar for the purpose of collecting compensation for the death of Mike Kolar; and that, under such circumstances, by the law of that country, the priest was required to furnish all documents giving the complete family history.

This certificate is important, if competent evidence, because it shows the purpose for which it was requested, and also that the widow herself requested the certificate, and that she was still living, and had not been divorced, and had never married

ROYAL v. HAWKEYE PORTLAND CEMENT CO. [195 Iowa

again. No objection was made to the competency of this certificate and several other certificates of foreign records, before the arbitration committee and the commissioner, but in the district court their competency was challenged, on the ground that there was no showing in the certificate that the person signing the instrument had any authority to sign the same in any official capacity; and that, if he did so act, it was not shown what the nature of his office was. Counsel for appellants urges that such certificates as were offered in evidence by claimant do not constitute legal evidence. Even if such documents offered by claimant are not such certificates in form and authentication as are required by Code Section 4647 or by the common-law rules, to be admissible in evidence in other kinds of actions, we think they were properly received in the instant proceeding. The Compensation Law expressly provides that neither the committee of arbitration nor the industrial commissioner shall be bound by common-law or statutory rules of evidence or by technical rules of procedure. In the case of *Reid v. Automatic Elec. Washer Co.*, 189 Iowa 964, we construed this provision of the Iowa act. In that case, the issue was the nature of the employment of the deceased at the time of his death, and the only evidence on that point as to just what the defendant was doing when killed was contained in an affidavit offered in evidence. The affidavit was rejected below. On appeal, we said:

"We are clearly of the opinion that the affidavit should have been considered, and given weight in connection with the other circumstances, and that, as a matter of law, the board and commissioner erred in not considering it."

We think that, under the liberal construction to be given to the Compensation Act to accomplish its beneficent purpose, the foreign documents offered, with the foundation given them by the testimony of the consul, should at least have equal weight with an ex-parte affidavit. When supported with the testimony of the consul as to their genuineness and the law regarding the keeping of records in Austria, these documents were considered of such character by the industrial commissioner that he remarked, in his findings on review:

"Any unprejudiced examination of the complete record

in this case will justify the conclusion that, if the dependency of this widow and these children is not established to the satisfaction of our statute, then it is practically impossible to make a case in successful support of any claim for nonresident alien dependency.''

IV.   The commissioner found that the claimant married Sava Chalich, and also found that there had been the birth of three children to the union.   There was direct testimony of the

2. EVIDENCE:
presumptions:
continuance
of life.

marriage and birth of two of the children.   Now, if the foreign certificate, bearing date of April 16, 1921, showing that the widow of decedent was then living and unmarried, be not considered competent to show those facts, then may the award be based on the presumption of the existence of the dependents, or either of them, at the time of the decision?

As before adverted to, there was the direct testimony of Dan Kolar, brother of decedent, and Mike Kolar, cousin of decedent, as to the marriage and the birth of two children, and that Mike Kolar, deceased, sent money to his wife, and as to Dan Kolar's corresponding with the widow up to July, 1920; and that Mike (Kolar's cousin) received a letter from the widow, only about six weeks before the trial in May, 1922.   The wife and children having been shown to be living, we think that the presumption may be indulged that they were still alive at the time of the arbitration hearing.   *Haddock v. Meagher,* 180 Iowa 264; *Northwestern Mut. L. Ins. Co. v. Stevens,* 71 Fed. 258; *Bartley v. Boston & N. S. R. Co.,* 198 Mass. 163 (83 N. E. 1093); Wigmore on Evidence, Sections 2530, 2531.   The extent and force of this presumption are well set forth in *Haddock v. Meagher,* supra, where we said, in part:

''The presumption of life continues until overcome or displaced by a more potent presumption, i. e., that of death; but this latter presumption has no retroactive force.''

*Bartley v. Boston & N. S. R. Co.,* supra, was an action brought by an administrator for wrongful death, and it was necessary to prove the existence of dependent relatives, to support recovery.   Evidence was offered that a sister in poor health had been living abroad for some three years before the death of the deceased, to whom he had sent small sums of money.   No fur-

ther showing was made as to her existence. The court held that such evidence was sufficient to support the verdict and to establish the existence of the dependent relative, using the following language:

"But if shown to have been living three years before his death, the presumption that she still lived continued until the contrary appeared."

V. Of course, the provision in the Compensation Act abolishing the common-law and statutory rules of evidence does not dispense with the necessity for legal evidence in support of a claim. *Renner v. Model Laundry, C. & D. Co.*, 191 Iowa 1288. In the *Renner* case, we quote with approval from *Carroll v. Knickerbocker Ice Co.*, 218 N. Y. 435 (113 N. E. 507), where the court, construing a statute quite like ours, said:

"There must be in the record some evidence of a sound, competent, and recognizedly probative character, to sustain the findings and award made; else the findings and award must, in fairness, be set aside by the court."

We have held many times that the findings of the industrial commissioner on fact questions are final if supported by evidence, even though, on appeal, the court might regard such findings as erroneous, or as against the greater weight of the evidence. *Pace v. Appanoose County*, 184 Iowa 498; *American Bridge Co. v. Funk*, 187 Iowa 397; *Herbig v. Walton Auto Co.*, 191 Iowa 394.

3. MASTER AND SERVANT: Workmen's Compensation Act: fact findings.

After a careful review of the whole record, we conclude that the decision of the commissioner has sufficient support in the record, and that the judgment of the district court confirming the decision of the commissioner should be, and it is,— *Affirmed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.